DEPARTMENT OF PUBLIC UTILITIES OF THE CITY
OF NORWICH *v.* FREEDOM OF INFORMATION
COMMISSION ET AL.
(AC 18549)

Foti, Spear and Hennessy, Js.

Argued April 20—officially released November 2, 1999

*Roger E. Koontz*, for the appellant (plaintiff).

*Victor Perpetua*, appellate counsel, with whom, on the brief, was *Mitchell W. Pearlman*, general counsel, for the appellee (named defendant).

*Joseph J. Cassidy*, pro se, the appellee (defendant), with whom, on the brief, was *Jodi M. Thomas*.

*Opinion*

HENNESSY, J. The plaintiff department of public utilities of the city of Norwich (Norwich) appeals from the judgment of the trial court upholding an order of the defendant freedom of information commission (commission)[1] requiring the plaintiff to disclose a study concerning the cost of serving a particular customer (study). Norwich specifically claims that the court improperly held that the study is not exempt from disclosure as a trade secret[2] pursuant to General Statutes (Rev. to 1997) § 1-19 (b) (5), now § 1-210 (b) (5).[3] We affirm the judgment of the trial court.

---

[1] Attorney Joseph J. Cassidy, acting on behalf of Yankee Gas Services Company, requested the cost of service study from Norwich. After Norwich denied his request, he appealed to the commission, which ordered disclosure. Cassidy is a defendant in this appeal.

[2] Norwich also claims that the court improperly determined that the study was not held in confidence where it was available only to Norwich, its customer and essential regulatory agencies. This claim is subsumed in the arguments addressed to the main issue of whether the study was a trade secret and whether it was exempt from disclosure under the statute.

[3] General Statutes (Rev. to 1997) § 1-19, now § 1-210, provides in relevant part: "(a) Except as otherwise provided by any federal law or state statute, all records maintained or kept on file by any public agency, whether or not such records are required by any law or by any rule or regulation, shall be public records and every person shall have the right to inspect such records promptly during regular office or business hours or to receive a copy of such records . . . .

"(b) Nothing in [the Freedom of Information Act] . . . shall be construed to require disclosure of . . . (5) trade secrets, which for purposes of [the Freedom of Information Act], are defined as unpatented, secret, commercially valuable plans, appliances, formulas or processes, which are used for the making, preparing, compounding, treating or processing of articles or materials which are trade commodities obtained from a person and which

The following facts are relevant to this appeal. Yankee Gas Services Company (Yankee) supplies natural gas to the Tribal Utility Authority of the Mashantucket Pequot Tribe (Tribal Utility). Norwich, a supplier of natural gas and a competitor of Yankee, had entered into an agreement with Tribal Utility to provide it with natural gas by building a pipeline. Yankee thereafter requested a copy of the agreement between Norwich and Tribal Utility, but was provided only a copy without the portion that contained the study. The study is a fifteen to twenty page document that reflects a specific formula to allocate costs to deliver a volume of product at a determined rate. Norwich claims that the study contains confidential and proprietary information, as well as feasibility estimates and evaluations describing the cost of providing the contracted gas service to the Mashantucket Pequot Reservation. Norwich further claims that such information is not readily available from other sources, and disclosure would give its competitors, including Yankee, an unfair business advantage in knowing the methodology used to adjust the cost of the contracted gas service.

The defendant attorney Joseph J. Cassidy, representing Yankee, complained to the commission, which ordered the disclosure of the study. Norwich appealed from that order to the Superior Court, which affirmed the order of the commission. Norwich now appeals to this court.

Norwich claims that the study is a trade secret and, as such, is exempt from disclosure pursuant to § 1-19 (b) (5). Norwich relies on the reasoning of our Supreme Court in *Triangle Sheet Metal Works, Inc.* v. *Silver,* 154 Conn. 116, 125–26, 222 A.2d 220 (1966), which held that a corporation's costs, pricing and bidding procedures

are recognized by law as confidential, and commercial or financial information given in confidence, not required by statute . . . ."

constitute confidential "trade secrets." Norwich also cites *Town & Country House & Homes Service, Inc.* v. *Evans*, 150 Conn. 314, 318–19, 189 A.2d 390 (1963), in which the court adopted the definition of trade secrets set forth in 4 Restatement, Torts § 757, comment (b), pp. 5–6 (1939), which provides in relevant part: "A trade secret may consist of any formula, pattern, device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it. . . . Some factors to be considered in determining whether given information is one's trade secret are (1) the extent to which the information is known outside of his business; (2) the extent to which it is known by employees and others involved in his business; (3) the extent of measures taken by him to guard the secrecy of the information; (4) the value of the information to him and to his competitors; (5) the amount of effort or money expended by him in developing the information; [and] (6) the ease or difficulty with which the information could be properly acquired or duplicated by others." Norwich agrees that the court properly relied on *Town & Country House & Homes Service, Inc.* v. *Evans*, supra, 314, in determining the meaning of "trade secret," but with respect to the element of secrecy, claims that the court went beyond the ruling in *Town & Country House & Homes Service, Inc.*, in apparently requiring a formal confidentiality agreement to demonstrate secrecy.

Applying the criteria set forth in *Town & Country House & Homes Service, Inc.*, the trial court found that "(1) cost of service studies are routinely viewed as confidential by [the department of public utility control]; (2) the agreement is available to [Norwich's] personnel, the Norwich utility commissioner, the tribal personnel and the [United States] Bureau of Indian Affairs; (3) no evidence of confidentiality agreements

or internal controls is in the record. There is testimony that it would not generally be available to the public; (4) the cost of service study was paid for by [Norwich] at a cost of thousands of dollars and is desired by a competitor, Yankee Gas; (5) the cost of the consultant was incurred by [Norwich]; (6) the information is available to various members of the Mashantucket tribe, [Norwich's] employees, the Norwich Utility Commission and the Bureau of Indian Affairs."

On the basis of these findings, the court concluded that "[t]he evidence of dissemination of the study and the absence of any confidentiality agreement or any steps taken to limit its dissemination defeat the claim of secrecy or confidentiality essential to the definition of 'trade secret.' [Norwich] failed to meet its burden of establishing the application of the exemption."

General Statutes § 1-21i (d), now § 1-206 (d), provides that "appeals from the decisions of the commission are taken pursuant to the Uniform Administrative Procedure Act (UAPA). General Statutes §§ 4-166 through 4-189. . . . This court is required to defer to the subordinate facts found by the commission, if there is substantial evidence to support those findings. *Dufraine* v. *Commission on Human Rights & Opportunities*, 236 Conn. 250, 259, 673 A.2d 101 (1996); *Newtown* v. *Keeney*, 234 Conn. 312, 319–20, 661 A.2d 589 (1995)." (Citations omitted; internal quotation marks omitted.) *Furhman* v. *Freedom of Information Commission*, 243 Conn. 427, 430–31, 703 A.2d 624 (1997). In the present case, the subordinate facts are not in dispute. Rather, it is the meaning of the statute that is disputed. "The determination of the meaning of a statute presents a question of law, which is within the province of the trial court and of this court." Id., 431.

The court found, and Norwich agrees, that the definition of trade secrets adopted by our Supreme Court in

*Town & Country House & Homes Service, Inc.* v. *Evans,* supra, 150 Conn. 318–19, is applicable. Norwich's claim turns, however, on the interpretation of the secrecy or confidentiality portion of the term "trade secrets."

"[I]t is well established that the general rule under the Freedom of Information Act [FOIA] is disclosure, and any exception to that rule will be narrowly construed in light of the 'general policy of openness expressed in the FOIA legislation.' *Board of Education* v. *Freedom of Information Commission,* [208 Conn. 442, 450, 545 A.2d 1064 (1988)]. 'The burden of proving the applicability of an exception to the FOIA rests upon the party claiming it.' *Rose* v. *Freedom of Information Commission,* 221 Conn. 217, 232, 602 A.2d 1019 (1992)." *Ottochian* v. *Freedom of Information Commission,* 221 Conn. 393, 398, 604 A.2d 351 (1992).

Norwich contends that the fact that some public officials reviewed the study does not defeat a claim of secrecy and, furthermore, that there was no evidence to show that access to it was allowed to the general public. See *Plastic & Metal Fabricators, Inc.* v. *Roy,* 163 Conn. 257, 269, 303 A.2d 725 (1972) (inspection by public official does not contradict element of secrecy). "[A] substantial element of secrecy must exist, to the extent that there would be difficulty in acquiring the information except by the use of improper means." (Internal quotation marks omitted.) Id., 265. However, "absolute secrecy is not essential and the plaintiff does not abandon his secret 'by delivering it or a copy to another for a restrictive purpose, nor by a limited publication.' " Id., 268.

Here, the trial court found that there was no evidence that the study was to be kept confidential. Although the court cited the lack of a confidentiality agreement as part of its reasoning for such a conclusion, it coupled

that with a finding that there were no efforts to limit the study's dissemination. Although we recognize that a thorough review of applicable case law reveals no case stating that a formal confidentiality agreement is essential to preserve the secrecy of a document, when the facts do not reveal discernible measures taken to guard the secrecy of the information, as evidenced by a lack of warnings alerting individuals to the confidentiality of the information, as well as a lack of a requirement that strict limits be placed on its distribution, the essential element of secrecy is compromised. The fact that the study was available to various members of the Mashantucket Pequot Tribe, Norwich employees, the Norwich utility commission and the Bureau of Indian Affairs demonstrates that the study was given wide distribution. Although these entities had an interest in the contents of the study and it was not shown that either Norwich's competitors or members of the general public had access to the study, there was no evidence that those who were provided with the study were under any obligation to keep the contents confidential or to curtail its distribution. The court reasonably could have found, therefore, that Norwich failed to meet its burden of establishing the application of the statutory exemption from disclosure.

The judgment is affirmed.

In this opinion the other judges concurred.