# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-4079

_____

| | | |
|---|---|---|
| Carey D. Moore, | * | |
| | * | |
| Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Nebraska. |
| Michael L. Kinney, Warden of the | * | |
| Nebraska Penal and Correctional | * | |
| Complex, | * | |
| | * | |
| Appellee. | * | |

_____

Submitted: June 13, 2001

Filed: January 25, 2002

_____

Before MURPHY, HEANEY and BEAM, Circuit Judges.

_____

HEANEY, Circuit Judge.

Carey Dean Moore was sentenced to death under the "exceptional depravity" component of Nebraska Revised Statutes § 29-2523 (1)(d). Since that date, he has litigated the constitutionality of the definition of the aggravator, asserting that it is unconstitutionally vague in violation of the Eighth and Fourteenth Amendments. The district court determined that the state district court's newly-crafted definition of exceptional depravity, which was applied against Moore in resentencing, rendered the

aggravator constitutional, and denied Moore habeas relief. Moore appeals, and we reverse.

I.    Factual and Procedural Background

Carey Dean Moore has been on death row since 1980. At the age of 21, Moore robbed and killed two Omaha taxi drivers during a four-day span in August, 1979. Moore was sentenced to death by a three-judge panel on the basis of Nebraska Revised Statutes § 29-2523(1)(d), which permits the imposition of a death sentence where "[t]he murder was especially heinous, atrocious, cruel, or manifested exceptional depravity by ordinary standards of morality and intelligence." It is agreed that the statute is vague on its face, and that the term exceptional depravity has sparked tremendous debate in the Nebraska courts and the Eighth Circuit.

The original sentencing panel found that neither murder was "especially 'heinous, atrocious, or cruel'" because "neither of the killings involved torture, sadism, sexual abuse, or the imposition by the defendant of extreme suffering on the victim," thus eliminating the first prong of the § 29-2523 (1)(d) aggravating factor. State v. Moore, Order of Sentence at 84 (Dist. Ct. Douglas County, June 20, 1980). However, the panel determined that the facts of the case established that the defendant exhibited exceptional depravity, the second prong of § 29-2523 (1)(d), because "each of [the] murders was . . . so coldly calculated as to indicate a state of mind totally and senselessly bereft of all regard for human life," and "[t]he defendant's own statements . . . while in custody . . . indicate[d] that these crimes had been in the planning stage for at least a day or two before the [first homicide]." Id. at 84-85. The sentencing panel also noted Moore's selection of his victims on the basis of their age, observing that Moore had explained in his confession that when his potential victims drove up, he hid in the vicinity of the address and checked the cab to see whether the driver was "not too young" because it was easier for him to shoot an older man rather than a younger man nearer his own age. Id. at 85. The panel

-2-

remarked that Moore selected the particular cab and driver on each occasion "because there were no other cabs at the taxi stand at the time, thus decreasing the chances of the defendant being identified, and because the driver was an older man." Id.

The Nebraska Supreme Court affirmed Moore's death sentence on the basis of three factors, placing particular emphasis on Moore's selection of older victims:

> We agree that the following circumstances exhibit a state of mind exceptionally depraved and totally and senselessly bereft of regard for human life: (1) the murders here were coldly planned as a part of the robberies. (2) The evidence clearly supports the conclusion that the murders were to be repetitive, i.e., the defendant intended to continue on his selected course of conduct so long as his needs required. (3) The victims were selected on the basis of certain characteristics which made it easier for the defendant to shoot them, namely, their ages. His unstated conclusion was that a human life in the middle years is less valuable than a younger life.

State v. Moore, 316 N.W.2d 33, 41 (Neb. 1982) (emphasis added).

In 1988, Moore sought federal habeas relief in the federal district court. In granting Moore's petition, the court examined the three factors relied upon by the state supreme court, cited above. It explained that "as earnest as the Supreme Court of Nebraska has been in its difficult task to bring Nebraska's statutory language of this aggravating factor into constitutional objectivity, a sentencer is left with only scattered and uncertain fragments for a definition." Moore v. Clarke, No. CV84-L-754, slip op. at 5 (D. Neb. Sept. 20, 1988). The court rejected the Nebraska Supreme Court's analysis, stating: "The procedure of simply analyzing on appeal the specific facts of the case to determine that they fall within the ambit of the language of the second prong of [the exceptional depravity aggravating circumstance] does not render the ambiguous words of the statute constitutional." Id. In emphasizing the ambiguous state of § 29-2523 (1)(d), the court made clear that State v. Palmer, 399

-3-

N.W.2d 706 (1986), which articulated five circumstances in which the exceptional depravity aggravator was applicable,[1] failed to adequately represent pre-1986 illustrations of exceptional depravity in Nebraska case law.  See id. at 4.

The district court relied in part upon Maynard v. Cartwright, 486 U.S. 356 (1988), in holding that the exceptional depravity aggravating factor was unconstitutionally vague.  In Maynard, the petitioner sought habeas relief after he was convicted of murder and sentenced to death in accordance with an Oklahoma aggravating factor statute.  The Supreme Court held that the "especially heinous, atrocious, or cruel" aggravating factor was unconstitutionally vague because it did not provide sufficient guidance to the jury in deciding whether to impose the death penalty.  Id. at 363-64.  The district court emphasized that Moore's sentencing panel was not "on notice" that the selection of a victim on the basis of age was a constitutionally sound indicator of the exceptional depravity aggravating factor.  In conclusion, the court explained that:

> [t]o date the dissimilar results in the cases before the Supreme Court of Nebraska, despite that court's attempt at specificity, leave the sentencer to look closely at the facts of each case and to decide

---

[1]The Nebraska Supreme Court held:

> [F]or the purpose of § 29-2523(1)(d) as an aggravating circumstance in determining whether the death penalty may be imposed, we hold that "exceptional depravity" in a murder exists when it is shown, beyond a reasonable doubt, that the following circumstances, either separately or collectively, exist in reference to a first degree murder: (1) apparent relishing of the murder by the killer; (2) infliction of gratuitous violence on the victim; (3) needless mutilation of the victim; (4) senselessness of the crime; (5) helplessness of the victim.

State v. Palmer, 399 N.W.2d 706, 731-32 (Neb. 1986).

whether those facts show enough to lead to a finding that the second prong of aggravating factor (d) is applicable, without restriction beyond the boundless words of the statute. More specificity is required in order for that aggravating circumstance to have a constitutional validity, whether the sentencer is a single judge, a panel of judges, or either with the assistance of a jury.

Id. at 6. The court ordered Moore's sentence reduced to life imprisonment unless the state initiated capital resentencing proceedings within sixty days after the judgment became final. The state promptly appealed.

This court affirmed, concluding that the Nebraska Supreme Court had failed to provide sufficient guidance to the sentencing panel "to cure the constitutional deficiencies of this vaguely-worded statute." Moore v. Clarke, 904 F.2d 1226, 1230 (8th Cir. 1990). We noted the state supreme court's conclusion that Moore thought a human life in the middle years was less valuable than a younger life, id. at 1229, but also determined that its imposition of the death sentence on the basis of age selection was one of the reasons why the statute remained unconstitutional.

This court also analyzed Nebraska Supreme Court precedent regarding the use of the exceptional depravity aggravating factor, and explained that it had previously defined exceptional depravity to mean "so coldly calculated as to indicate a state of mind totally and senselessly bereft of regard for human life," State v. Harper, 304 N.W.2d 663, 668 (1981); "unresisting victims," State v. Peery, 261 N.W.2d 95, 104-105 (1977); and "exceptional," State v. Simants, 250 N.W.2d 881, 891 (1977), and found those definitions to be subjective, vague, and overly broad. See Moore, 904 F.2d at 1230. Additionally, we determined that Palmer could not be accurately characterized as clarifying existing state law: "[t]he Nebraska Supreme Court's attempt in Palmer to rearticulate its interpretation of the vague 'exceptional depravity' language fails because it cannot be reconciled with the prior Nebraska cases." Id. at 1231. Further, "[t]o us, the greater significance of Palmer is that it demonstrates the

Nebraska Supreme Court's exhaustive efforts to redefine the phrase 'exceptional depravity'; this simply underscores our conclusion that the phrase is unconstitutionally vague." Id. at 1232. Finally, we concluded:

> Our examination of the state court precedent available to guide sentencing bodies in Nebraska which are required to determine whether the murder "manifested exceptional depravity" leads us to conclude, as did the district court, that, as earnestly as the Nebraska Supreme Court has attempted to provide objective criteria, the unconstitutional vagueness of the critical language in this statute remains. A sentencing body may glean only subjective and unilluminating fragments from existing case law.

Id. at 1232. We subsequently denied the state's petition for rehearing, Moore v. Clarke, 951 F.2d 895 (8th Cir. 1991), and the United States Supreme Court denied certiorari, Clarke v. Moore, 504 U.S. 930 (1992).

Upon remand to the Nebraska Supreme Court for resentencing, the state requested that the court define exceptional depravity in a way that would satisfy the federal court's objections to its constitutionality, apply the newly constructed definition to the facts of the case, reweigh the aggravating and mitigating factors, and resentence Moore. See State v. Moore, 502 N.W.2d 227, 228 (Neb. 1993). The supreme court declined the request, stating, "we acknowledge that if this court reweighed the aggravating and mitigating factors and resentenced Moore, the federal court would likely reverse . . . . Therefore, it is futile for us to proceed with the resentencing," Id. at 230. The court remanded the case to the state district court for resentencing "in the interest of judicial economy." Id. The supreme court did not explain why the state district court could narrow the definition of exceptional depravity when it believed that it itself should not, nor did it provide guidance to the sentencing panel for the application of the constitutionally defunct exceptional depravity aggravating factor.

At resentencing, the state district court evaluated its instructions from the state supreme court, and identified three options:

> inasmuch as the federal Circuit Court of Appeals has determined that the present definition of "exceptional depravity" is unconstitutionally vague, this sentencing panel is left with an ineffective and constitutionally infirm interpretation of "exceptional depravity" as it proceeds to determine the sentence to be imposed on Carey Dean Moore. That leaves us with essentially three options: (1) we can apply the Nebraska Supreme Court's most recent construction of the "exceptional depravity" prong of (1)(d) to the killings . . . knowing full well that a death sentence imposed . . . on the basis of that construction is virtually certain to be vacated in subsequent proceedings; or (2) we can avoid determining the "exceptional depravity" aggravator, on which the original sentencing panel relied to a significant degree, instead imposing sentence on the basis of the remaining valid aggravating and mitigating circumstances . . . or (3) we can attempt to fashion our own objective, limiting construction of "exceptional depravity" and then apply that construction to the facts of the cases now pending before us.

State v. Moore, Order of Sentence at 12 (Dist. Ct. Douglas Co., Apr. 21, 1995). After choosing the third option, it continued:

> Having no effective appellate definition, we have a duty and obligation in the first instance to redefine appropriate constitutional limiting conditions for this aggravating circumstance. In order to meet the objections raised in the federal courts, this must be done in a total and comprehensive manner, superseding all prior appellate limiting conditions. We also conclude that, in restating such conditions, we are affording the Defendant an opportunity for appellate review of both the conditions and our factual determinations thereunder.

Id. at 12-13. The resentencing panel concluded that the newly crafted definition of exceptional depravity, which would permit a sentencing authority to make "a principled distinction between those who deserve the death penalty and those who do not," should include the following factors:

> 1) the killer's infliction of prolonged or significant physical violence, such as sexual abuse, on the victim after the victim's death or loss of consciousness . . . ; 2) the killer's mutilation or dismemberment of the victim's body after death . . . ; 3) the apparent relishing of the murder by the killer, as exemplified by manifestations of satisfaction, gratification, enjoyment, or pleasure at the victim's suffering or death . . . ; 4) the killer's cold, calculated planning of the victim's death, as exemplified by experimentation with the method of causing the victim's death or by the purposeful selection of a particular victim on the basis of specific characteristics such as race, gender, creed, sexual orientation, disability, or age.

Id. at 13-14 (emphasis added). It concluded that "the Defendant's cold, calculated planning of each victim's death, as manifested by the purposeful selection of a particular victim on the basis of the specific characteristic of age, establishes the existence of exceptional depravity beyond a reasonable doubt, and this aggravating circumstance is applicable to the murders of [both victims]." Id. at 16.

Moore appealed and the Nebraska State Supreme Court affirmed. Although this court had stated that the Palmer factors were unconstitutionally vague, the state supreme court sought to rehabilitate the Palmer construction of the exceptional depravity component of aggravating circumstance § 29-2523(1)(d): "[Palmer] is constitutional . . . . It therefore cannot be said that at the time of Moore's resentencing, there existed no constitutionally viable definition of exceptional depravity. The resentencing panel could have applied the Palmer factors." State v. Moore, 553 N.W.2d 120, 131 (Neb. Sept. 27, 1996).

The court continued,

> Although the resentencing panel's view that there was no
> constitutionally viable interpretation of exceptional depravity was
> mistaken, it was, given the confusing state of precedent on the
> issue, nevertheless within its authority to define the exceptional
> depravity component in such a way as to ensure that Moore
> received sentences that were consistent with constitutional
> requirements. Obviously, in the absence of clear precedent, a trial
> court confronting a statute for the first time must apply the statute
> in accordance with its own understanding of it.

Id. at 132. (citing In re Guardianship and Conservatorship of Bloomquist, 523
N.W.2d 352 (1994); In re Estate of Holt, 516 N.W.2d 608 (1994); State v. Stein, 486
N.W.2d 921 (1992)). The state supreme court then determined that the sentencing
panel's reformulation of the "cold, calculated planning" aspect of exceptional
depravity was sound because Moore had purposefully selected the victims on the
basis of their age. See id. at 133.

Once again, Moore sought habeas relief in federal court. The magistrate
recommended that Moore's petition for Writ of Habeas Corpus be granted for two
reasons: 1) defining exceptional depravity as "the cold and calculated planning of
each victim's death as evidenced by the purposeful selection of a particular victim on
the basis of specific characteristics such as . . . age" failed to properly "channel" the
sentencer's discretion, contrary to Supreme Court precedent; and 2) the panel's
application of its construction of exceptional depravity violated Moore's due process
rights because it was done in an ex post facto manner, depriving him of notice and
opportunity to respond. See Moore v. Kinney, No. 4:99CV3263, slip op. at 22-23
(D. Neb. Sept. 18, 2000). "Nothing has changed in the present litigation," the
magistrate explained:

> The Nebraska Supreme Court has neither abandoned nor expressed a desire to abandon pre-<u>Palmer</u> constructions that have been held to be constitutionally invalid . . . . This reluctance of the state's supreme court to abandon prior constructions has left the sentencer, as this court has previously stated, with a 'series of suggestions, some objective and some not, from which to choose, without assurance that the series is complete.' . . . Therefore, I conclude the resentencing panel committed constitutional error in considering this aggravator to resentence the petitioner.

<u>Moore v. Kinney</u>, No. 4:99CV3263, slip op. at 17-18 (D. Neb. Sept. 19, 2000) (citation omitted).

The magistrate also determined that the sentencing panel had created the fourth factor, the selection of a victim on the basis of a specific characteristic, based on the facts of the <u>Moore</u> case: "The panel reviewed the facts of petitioner's case, as is evident from their citing of petitioner's first appeal to the Nebraska Supreme Court, and then, for all practical purposes, concluded that those facts made out the 'exceptional depravity' aggravator by creating the 'selection of the victim' factor." <u>Id</u>. at 22. The magistrate rejected this fourth option because the state court's placement of "such as" before the list of "specific characteristics" allowed the sentencer to choose from a series of suggestions, some objective, and some not, without concern that the cited characteristics may be incomplete and subject to "a myriad of seemingly limitless applications." <u>Id</u>. at 21.

The district court rejected the magistrate's recommendations. <u>Moore v. Kinney</u>, No. 4:99CV3263, slip op. at 1 (D. Neb. Nov. 14, 2000). It held that the sentencing panel had derived its definition from prior cases in which exceptional depravity existed, where the evidence demonstrated the killer's cold, calculated planning of the victims' deaths as exemplified by the purposeful selection of a particular victim on the basis of the specific characteristic of age. <u>Id</u>. at 19. It reasoned:

The planning must be "cold," that is to say, "calculated." Next, the planning must involve a purposeful sorting process to select victims. The planning must focus upon individuals who have historically been subjected to discrimination or who otherwise possess some immutable characteristic that the victim cannot change. For example, the murderer must plan to select victims because of their age. Taken together, these elements plainly limit the number of Nebraska murderers who may be sentenced to death.

Moore v. Kinney, No. 4:99CV3263, slip op. at 15 (D. Neb. Nov. 14, 2000). It determined that Moore had not been denied due process by the application of the selection on the basis of age because he had notice of the fact that this would occur before he was resentenced:

> None of this evidence of planning or age selection could have been a surprise to Moore or his counsel since it had been presented in the first sentencing hearing and was extensively discussed by the Nebraska Supreme Court during the 1982 appeal as convincing proof of the "exceptional depravity" of Moore's crime. Moreover, in 1986, the first Moore opinion was cited as support for the Joubert decision and the Joubert decision emphasized the importance of planning and selection due to age as establishing "exceptional depravity.

Id. at 22. The court concluded:

> Since his first appeal in 1982, the petitioner has demanded that the courts more clearly define the words "exceptional depravity." Over the intervening years, the refined definition that Mr. Moore sought was carefully, albeit incrementally, provided to him. Relying upon a cold, calculated plan, Moore committed two separate murders, purposefully selecting each victim because of older age. According to the more precise definition that Moore so vigorously solicited, this behavior was found to be "exceptionally depraved" by three experienced trial judges and seven thoughtful

-11-

members of the Nebraska Supreme Court. Mr. Moore has no legitimate reason to be surprised.

Id. at 25.

## II. Discussion

### A.    Eighth Circuit Precedent

This court found the Nebraska courts' attempt at narrowing the definition of exceptional depravity, where age was a part of Nebraska Supreme Court case precedent, unconstitutionally vague in 1990. Moore v. Clarke, 904 F.2d 1226 (1990). The state's petition for rehearing was denied, Moore v. Clarke, 951 F.2d 895 (8th Cir. 1991), and the United States Supreme Court denied certiorari on that very issue. Clarke v. Moore, 504 U.S. 930 (1992). We remain bound by our 1990 opinion.

The state argues that Joubert v. Hopkins, 75 F.3d 1232, 1240-41 (8th Cir. 1996), authorized the Nebraska courts' definition of the exceptional depravity aggravator. Joubert killed two boys, ages 12 and 13, within a four-month period. He was sentenced to death in part because the sentencing panel determined that § 29-2523 (1)(d) was applicable with respect to both clauses of the subsection. The Nebraska Supreme Court affirmed the sentencing panel's decision because the defendant "planned these abductions and murders far in advance . . . [t]he murders were to be repetitive . . . and the victims selected by the defendant would, by his fantasized standards, be somewhat defenseless and consist of prepubescent boys or women fitting the pictorial description gleaned from detective magazine covers." State v. Joubert, 399 N.W.2d 237, 250 (Neb. 1986) (citation omitted in the original).

The state supreme court relied on the Palmer factors in finding that the defendant had exhibited exceptional depravity: "the murders were coldly planned as

-12-

part of a repetitive program of self-gratification, involving immature victims selected on the basis of their availability at a time when the likelihood of detection was slight." Id. at 251 (citing State v. Moore, 316 N.W.2d 33 (1982)).

On appeal, a panel of this court declined to decide whether the exceptional depravity aggravator was unconstitutionally vague in Joubert because the claim was not presented in the state courts, and was therefore procedurally barred. Joubert v. Hopkins, 75 F.3d 1232, 1240-41 (8th Cir. 1996). Nevertheless, the majority, with Judge J. Gibson dissenting, opined in dicta that the Nebraska Supreme Court had successfully narrowed the statute in the 1982 Moore decision; the application of the narrowed definition to Joubert at resentencing, therefore, was not plain error. See id.

Contrary to the state's argument, Joubert cannot be cited for the proposition that the Eighth Circuit approved a "broader definition of exceptional depravity than was employed in resentencing Moore." Appellee's Brief at 14. In light of the fact that this court found the exceptional depravity prong of aggravator § 29-2523 (1)(d) unconstitutionally vague in 1990 when the sentencing panel applied it to Moore in 1980, it remains unconstitutionally vague. We are bound by our opinion in Moore v. Clarke, 904 F.2d 1226, 1234-35 (8th Cir. 1990); only en banc panels have the authority to alter prior decisions.

B.      The State Trial Court Unconstitutionally Narrowed and Applied the Exceptional Depravity Aggravator at Resentencing

The three-judge panel did not have the authority to impose the death penalty against Moore on the basis of its reconstruction of the exceptional depravity aggravator. The state has failed to cite a case in which an unconstitutionally vague statute regarding the application of an aggravating circumstance has been cured on remand by a state trial court, which then resentences the defendant to death on the basis of the newly-defined statute. Supreme Court precedent does not support that

-13-

proposition. In <u>Walton v. Arizona</u>, 497 U.S. 639, 653-54 (1990), the Court authorized a state appellate court's narrowing of an aggravating circumstance definition for trial judges to later apply on remand. It articulated the federal court's role in reviewing the state's application of a statutory aggravator:

> When a federal court is asked to review a state court's application of an individual statutory aggravating or mitigating circumstance in a particular case, it must first determine whether the statutory language defining the circumstance is itself too vague to provide any guidance to the sentencer. If so, then the federal court must attempt to determine whether the state courts have further defined the vague terms and, if they have done so, whether those definitions are constitutionally sufficient.

<u>Id</u>. at 654. The Court then cited two additional cases in which the state supreme court had sufficiently defined the statutory aggravating circumstance to be applied later by the sentencing panel. <u>See</u> <u>Maynard v. Cartwright</u>, 486 U.S. 356 (1988); <u>Proffitt v. Florida</u>, 428 U.S. 242 (1976).

<u>Gregg v. Georgia</u>, 428 U.S. 153, 195 (1976) (overturned on other grounds), also supports our conclusion that a state trial court may not define a vaguely worded statute at first instance. <u>Gregg</u> requires that the state provide a capital sentencer with "a meaningful basis for distinguishing the few cases in which [the death penalty] is imposed from the many cases in which it is not." <u>Id</u>. at 188 (quoting <u>Furman</u>, 408 U.S. 238, 313 (1972) (White, J., concurring)). We acknowledged in our first opinion in this case, anticipating that the Nebraska Supreme Court would conduct a resentencing hearing if the state filed a timely motion, that "a state supreme court may salvage a facially-vague statute by construing it to provide the sentencing body with objective criteria for applying the statute." <u>Moore</u>, 904 F.2d at 1229. This statement reflects a logical assumption that the formulation of a new construction is a job for the state's highest court. The Nebraska Supreme Court's puzzling delegation of this

-14-

task to the sentencing panel leads us to conclude that Moore's second death sentence is not only foreclosed by this court's previous decisions in his case, but is also the product of an imprudent and unprecedented ad hoc judicial narrowing process. The Gregg court explained:

> the concerns expressed in Furman that the penalty of death not be imposed in an arbitrary or capricious manner can be met by a carefully drafted statute that ensures that the sentencing authority is given adequate information and guidance. As a general proposition these concerns are best met by a system that provides for a bifurcated proceeding at which the sentencing authority is apprised of the information relevant to the imposition of sentence and provided with standards to guide its use of the information.

428 U.S. at 195.

The concern for eliminating arbitrariness and capriciousness expressed in Gregg is not served by vesting the judicial narrowing function in the same tribunal that will be responsible for applying in the first instance the resulting construction; no "clear and objective" criteria could be expected to emerge from the procedure initiated by the Nebraska Supreme Court upon remand. We have no alternative but to reject the district court's conclusion that the newly defined exceptional depravity component of § 29-2523 (1)(d) was constitutionally applied against Moore.

III. Conclusion

Justice demands an end to this twenty-year litigation. Bound to our previous decision, we hold that the definition of exceptional depravity, inclusive of the purposeful selection of a victim on the basis of age, remains unconstitutionally vague. We reverse the district court and direct it to issue the writ of habeas corpus, and request that it remand the case to the Nebraska Supreme Court for resentencing, consistent with our opinion that the exceptional depravity prong of § 29-2523 (1)(d)

-15-

is unconstitutionally vague, and that Moore cannot be sentenced to death on the basis of the exceptional depravity component of the aggravator.

BEAM, Circuit Judge, dissenting.

I agree with the court that justice demands an end to this twenty-year litigation, but not through a result that is clearly wrong. I respectfully suggest that the outcome of this appeal should be governed by a faithful application of law, nothing else.

The court hangs its hat on the premise that Moore v. Clarke, 904 F.2d 1226 (8th Cir. 1990) (Moore I), mandates today's decision, stating "[w]e are bound by our opinion in [Moore I]; only en banc panels have the authority to alter prior decisions." Ante at 13. This language, through omission, misstates the law. The court in Moore I (with Judge Floyd Gibson dissenting) found that Moore was sentenced in 1980 in violation of the Eighth Amendment because the "exceptional depravity" aggravator applied by the Nebraska trial court was unconstitutionally vague. 904 F.2d at 1233. However, even accepting the dubious notion that Moore I reflected valid precedent at any point in 1990, subsequent Supreme Court precedent is incompatible with its holdings, and we are thus no longer bound. Young v. Hayes, 218 F.3d 850, 853 (8th Cir. 2000) (panel no longer bound by prior panel opinion when intervening Supreme Court case is inconsistent with previous opinions).

Moore was first sentenced after trial in 1980 by a three-judge sentencing panel as provided by Nebraska law.[2] Neb. Rev. Stat. § 29-2520. The panel, relying upon a previous Nebraska Supreme Court narrowing of prong two of Nebraska Revised Statute § 29-2523(1)(d) found that Moore's murders were the product of "exceptional

---

[2]In this case, there have been two Nebraska trial court sentencing panels, one in 1980 and one in 1995. In this opinion, I generally refer to the 1980 panel as the "sentencing panel" and the 1995 panel as the "resentencing panel."

depravity by ordinary standards of morality and intelligence."  Nebraska had earlier, in conjunction with the exceptional depravity prong used a "coldly calculated" formulation in two cases issued on the same day in 1977–State v. Rust, 250 N.W.2d 867 (Neb. 1977) and State v. Holtan, 250 N.W.2d 876 (Neb. 1977).[3]  The Moore sentencing panel applied this precedent.

The Nebraska Supreme Court did not indicate the source of its "coldly calculated" formulation but the Florida death penalty statute, enacted in response to Furman v. Georgia, 408 U.S. 238 (1972), contained a separate "cold, calculated" aggravator beginning in 1979.  See Jonathan Kennedy, Florida's "Cold, Calculated and Premeditated" Aggravating Circumstance in Death Penalty Cases, 17 Stetson L. Rev. 47, 52, 60-61 (1987).  Florida still uses this statutory rule, without published disagreement from the Supreme Court, and the Florida Supreme Court has held this aggravator is constitutional.  Fennie v. State, 648 So.2d 95, 98 (Fla. 1994), cert. denied, 513 U.S. 1159 (1995).[4]

_____

[3]In Holtan, the court stated that because the defendant killed and attempted to kill unresisting victims of robbery, the "act was totally and senselessly bereft of any regard for human life."  250 N.W.2d at 880.  Although the court did not use the terms "cold" and "calculated" in Holtan, in Rust, the court stated, "[t]oday in Holtan, we have also said that aggravating circumstance (d) exists where the murder is so coldly calculated as to indicate a state of mind totally and senselessly bereft of regard for human life."  250 N.W.2d at 874.

[4]Numerous other states use a statutorily enacted or common law "cold, calculated" circumstance in death penalty litigation.  I can find no instance in which the Supreme Court has found use of this circumstance unconstitutional because of vagueness.  See, e.g., Fla. Stat. Ann. § 921.141(5)(i) (West 2001) (Florida statutory aggravator); 720 Ill. Comp. Stat. 5/9-1(b)(11) (2001) (Illinois statutory aggravator); Angleton v. State, 714 N.E.2d 156, 160 (Ind. 1999) (court held that finding of "cold-blooded and calculated" aggravator did not merely reprise knowing and intentional element of first-degree murder), cert. denied, 529 U.S. 1132 (2000); State v. Smith, 524 S.E.2d 28, 44-45 (N.C.) (finding of  heinous, atrocious, or cruel aggravator supported by evidence that defendant "coldly and designedly planned and carried out"

-17-

As this dissent will discuss, <u>infra</u>, the 1980 sentencing panel was on firm constitutional ground when it found "exceptional depravity" because "each of the murders was . . . so coldly calculated as to indicate a state of mind totally and senselessly bereft of regard for human life," and that "[t]he defendant's own statements . . . while in custody . . . indicate[d] that these crimes had been in the planning stage for at least a day or two before the [first] homicide." <u>State v. Moore</u>, Order of Sentence at 84-85 (Dist. Ct. Douglas County, June 20, 1980). The sentencing panel also noted Moore's selection of his victims on the basis of their age, observing that Moore had explained in his confession that when his potential victims drove up, he hid in the vicinity of the address and checked the cab to see whether the driver was "not too young" because it was easier for him to shoot an older man rather than a younger man nearer his own age. <u>Id.</u> at 85. The Nebraska Supreme Court affirmed the death sentence imposed by the 1980 panel saying:

> We agree that the following circumstances exhibit a state of mind exceptionally depraved and totally and senselessly bereft of regard for human life: (1) The murders here were coldly planned as a part of the robberies. (2) The evidence clearly supports the conclusion that the murders were to be repetitive, i.e., the defendant intended to continue on his selected course of conduct so long as his needs required. (3) The victims were selected on the basis of certain characteristics which made it easier for the defendant to shoot them, namely, their ages. His unstated conclusion was that a human life in the middle years is less valuable than a younger life.

<u>State v. Moore</u>, 316 N.W.2d 33, 41 (Neb. 1982). This affirming language followed the sentencing panel formulation almost in its entirety.

---

the murder), <u>cert. denied</u>, 531 U.S. 862 (2000); <u>State v. Terry</u>, No. M1999-00191-CCA-R3-DD, 2000 W.L. 284067 at *11 (Tenn. Crim. App. Mar. 17, 2000) (evidence showed the defendant's "cold calculated planning of the entire murderous scheme" demonstrated depravity of the mind aggravating factor), <u>aff'd</u>, 46 S.W.3d 147 (Tenn.), <u>cert. denied</u>, 122 S. Ct. 553 (2001).

-18-

Then, in 1986 the Nebraska Supreme Court decided State v. Palmer, 399 N.W.2d 706 (Neb. 1986). The Nebraska Supreme Court adopted the Arizona Supreme Court's five-factor test (developed in State v. Gretzler, 659 P.2d 1, 11-12, (Ariz.), cert. denied, 461 U.S. 971 (1983)), to narrow the "exceptional depravity" aggravator. The court said:

> [F]or the purpose of § 29-2523(1)(d) as an aggravating circumstance in determining whether the death penalty may be imposed, we hold that "exceptional depravity" in a murder exists when it is shown, beyond a reasonable doubt, that the following circumstances, either separately or collectively, exist in reference to a first degree murder: (1) apparent relishing of the murder by the killer; (2) infliction of gratuitous violence on the victim; (3) needless mutilation of the victim; (4) senselessness of the crime; or (5) helplessness of the victim.

399 N.W.2d at 731-32.

Of course, the Palmer "senselessness of the crime" articulation when coupled with the circumstance of a "coldly planned" murder based upon factors of "age" as outlined by both the 1980 sentencing panel and the Nebraska Supreme Court in its 1982 affirmance of the panel, clearly and sufficiently channels the sentencer's discretion within constitutional limits. Gretzler, 659 P.2d at 12 (senselessness or helplessness combined with other narrowing circumstances separate the crime from the norm of those considered to be noncapital offenses).

This brings us to the specifics of this court's 1990 Moore I decision, reached, as earlier indicated, over the vigorous dissent of Judge Floyd Gibson, wherein this court found that Moore was sentenced under an unconstitutionally vague exceptional depravity factor. 904 F.2d at 1233. With regard to the Palmer case, decided six years after Moore was sentenced, the panel stated:

Assuming arguendo that Palmer had been available to guide the panel sentencing Moore, we still are not convinced that the Palmer decision, when considered with the earlier cited cases, fulfills the constitutional obligation of the Nebraska Supreme Court. . . . Our examination of the state court precedent available to guide sentencing bodies in Nebraska . . . leads us to conclude, as did the district court, that, as earnestly as the Nebraska Supreme Court has attempted to provide objective criteria, the unconstitutional vagueness of the critical language in this statute remains.

Id. at 1231-32.

One month after Moore I was issued, the United States Supreme Court upheld the validity and constitutionality of the State of Arizona's narrowing scheme in Walton v. Arizona, 497 U.S. 639, 654-55 (1990) (stating that the construction given to the challenged factors was "virtually identical" to the construction given by the Oklahoma Supreme Court which was approved in Maynard v. Cartwright, 486 U.S. 356 (1988)), and in Lewis v. Jeffers, 497 U.S. 764, 777-78 (1990) (Arizona Supreme Court construed the "especially heinous, cruel or depraved" aggravating factor in a constitutionally permissible manner).

Since the Nebraska Supreme Court in Palmer adopted its test directly from the validated Arizona formulation, the state immediately asked the Moore I panel to rehear and reconsider the case in light of Walton and Lewis. In deciding the motion for rehearing, the court, as required by necessary deference to Supreme Court precedent, substantively backed off its earlier condemnation of the Palmer approach, although this retreat is not mentioned in today's opinion. However, the rehearing court (again over Judge Gibson's dissent) still did not find in favor of the state. Moore v. Clarke, 951 F.2d 895, 897-98 (8th Cir. 1991) (Moore II).

The court's Moore II rehearing opinion acknowledged that the Supreme Court "sustained application of" the Arizona test in both Walton and Jeffers. Id. at 897.

However, the court held that Palmer's narrowing effort was still unavailing to the state. Minutely parsing the language of various opinions, the Moore II court erroneously concluded that the "so coldly, calculated" as to indicate a state of mind totally and senselessly bereft of all regard for human life circumstance was not employed in Palmer. Id. This conclusion ignores the fact that the fourth Palmer factor channels the sentencer toward consideration of the "senselessness of the crime." 399 N.W.2d at 732. The Moore II court further stated that Jeffers validated only "a portion" of the Gretzler test used in Palmer and implied that this portion did not include the "senselessness" prong of the Gretzler test. 951 F.2d at 897. However, this position is specifically refuted in Jeffers wherein the Supreme Court states:

> We granted certiorari in Walton to decide "[w]hether Arizona's 'especially heinous, cruel or *depraved*' aggravating circumstance, as interpreted by the Arizona courts, fails to channel the sentencer's discretion as required by the Eighth Amendment" . . . and our judgment in that case plainly rested on a negative answer to that question.

Jeffers, 497 U.S. at 778 (quoting Walton, 497 U.S. at 652-56) (emphasis added).

Moore II also stated, "[t]he standard applied to Moore in 1980 was modified substantially six years later by Palmer, and the changes found desirable by the Nebraska Supreme Court in Palmer then demonstrate that the standards applied to Moore [in 1980] were vague." 951 F.2d at 897. This simply misreads and misapplies Palmer and other applicable Nebraska precedent. If anything, the Palmer formulation approved by the Supreme Court in Jeffers and Walton, actually broadened the "senselessness" factor.[5]

---

[5]The fourth Palmer factor only requires the sentencer to consider the senselessness of the crime, but under Rust, and pursuant to the 1980 Moore sentencing panel's formulation, the sentencer considers whether the murders were totally and *senselessly* bereft of regard for human life as evidenced by cold planning, repetitive murders, and the fact that the victims were selected on the basis of their

So, contrary to the court's pronouncements today, <u>ante</u> at 5, the Nebraska Supreme Court's rulings in <u>Rust</u>, <u>Moore</u> (1982) and <u>Palmer</u> are fully reconcilable; indeed together, they inexorably point toward a constitutional use of the "exceptional depravity" aggravator by the Moore sentencing panel in 1980 and, more certainly, by the resentencing panel established in 1995.

I concede, as I must, that <u>Gretzler</u> notes that "[t]he mere existence of senselessness or helplessness of the victim, in isolation, need not always lead to a holding that the crime is heinous or depraved." 659 P.2d at 11-12. But, where circumstances separate the crime from the "norm" of first-degree murder (as in <u>Rust</u>, <u>Holtan</u>, <u>Gretzler</u>, <u>Palmer</u> and this case), the sentencer is entitled to find that the crime was committed in a "depraved manner." <u>Id.</u> at 12. Nonetheless, the court today, as did the court in <u>Moore II,</u> ignores the <u>Palmer</u> narrowing and ignores the fact that the "coldly, calculated" circumstance, adopted by the Nebraska Supreme Court as early as 1977, is but a further, and fully constitutional narrowing (indeed, a judicially acceptable subset) of the "senselessness of the crime" factor.

Thus, given the convoluted course of this case in the Eighth Circuit, it is not surprising that after the remand from this court, the Nebraska Supreme Court, which can read and interpret the Constitution as well as this court, expressed understandable frustration and uncertainty as to what, if anything, might possibly pass constitutional muster in this circuit. While in this frame of mind, the Nebraska Supreme Court further remanded the case to a newly constituted trial-level resentencing panel. 502 N.W.2d 227, 228 (Neb. 1993).

The court today interprets these statements and acts as a concession by the Nebraska Supreme Court that state law continued to be unconstitutionally vague and

---

advanced ages. 316 N.W.2d at 41.

-22-

that a perception of inability to adequately narrow the aggravator existed. These are unsupported inferences.

It is true that the Nebraska Supreme Court, in remanding Moore's case for resentencing, said, "we acknowledge that if this court reweighed the aggravating and mitigating factors and resentenced Moore, the federal court would likely reverse." Id. at 230. However, this statement was not made because the Nebraska court, as argued by the court today, believed that its construction of section 29-2523(1)(d) was vague and unconstitutional.[6] Instead, the Nebraska court noted that the Eighth Circuit, in habeas corpus review of Rust, see Rust v. Hopkins, 984 F.2d 1486 (8th Cir. 1993), had opined that Nebraska appellate courts should not reweigh and resentence a capital defendant. Moore, 502 N.W.2d at 229.[7] It was *this* issue that prompted the Nebraska Supreme Court to remand to a newly formed resentencing panel, *not* concern for the vagueness of the exceptional depravity aggravator.

Also expressing concern about the federal-court-imposed confusion over "exceptional depravity" in this circuit, the resentencing panel (apparently out of an abundance of caution) decided to narrow the "senselessness of the crime" factor by reiterating the "coldly calculated" circumstance which had been earlier articulated by the Nebraska Supreme Court in Rust, 250 N.W.2d at 874, Holtan, 250 N.W.2d at 880, Moore, 316 N.W.2d at 41, and State v. Harper, 304 N.W.2d 663, 668 (Neb. 1981).

---

[6]Indeed, the court subsequently stated, Palmer "is constitutional. . . . [i]t therefore cannot be said that at the time of Moore's [1995] resentencing there existed no constitutionally viable definition of exceptional depravity. The resentencing panel could have applied the Palmer factors." State v. Moore, 553 N.W.2d 120, 131 (Neb. 1996).

[7]The Nebraska Supreme Court later agreed with this appraisal in State v. Reeves, 604 N.W.2d 151, 168-69 (Neb. 2000), wherein it found that under Nebraska's two-tiered system, reweighing and resentencing by an appellate court denies due process.

The resentencing panel then adopted its own more narrow version of this "senselessness" aggravator by discussing more extensively the "experimentation" and "purposeful selection" elements of the aggravator:

> The killer's cold, calculated planning of the victim's death as exemplified by experimentation with the method of causing the victim's death or by the purposeful selection of a particular victim on the basis of specific characteristics such as race, gender, creed, sexual orientation, disability or age.

This formulation more than adequately and constitutionally narrowed the "coldly calculated" circumstance. Indeed, a similar, and arguably more vague formulation of the "coldly calculated" factor has previously been approved by this court.

In State v. Joubert, 399 N.W.2d 237 (Neb. 1986), the Nebraska Supreme Court found that the murders in that case manifested exceptional depravity, in part because the murders "were coldly planned as part of a repetitive program of self-gratification, involving *immature* victims selected on the basis of their availability." Id. at 251 (emphasis added). On habeas review, this court held that the narrowed definition applied by the Nebraska Supreme Court in Joubert was "clearly constitutional." Joubert v. Hopkins, 75 F.3d 1232, 1244 (8th Cir. 1996). The narrowed definition of the coldly calculated factor utilized in Joubert is quite similar to that used here–the Joubert defendant selected victims because of their immaturity and availability and the murders were repetitive. 399 N.W.2d at 251. Moore selected his victims on the basis of their advanced ages and the murders were repetitive.

Furthermore, the key inquiry concerning whether the "coldly calculated" formulation provides a constitutional narrowing of "senselessness" is not the specific substance of that narrowed definition, but simply whether the sentencing process is not infected with bias or caprice. Jones v. United States, 527 U.S. 373, 400 (1999). This is the "controlling objective when we examine eligibility and selection factors

for vagueness." Tuilaepa v. California, 512 U.S. 967, 973 (1994). This vagueness review is deferential, however, and "[a]s long as an aggravating factor has a core meaning that criminal juries should be capable of understanding, it will pass constitutional muster." Jones, 527 U.S. at 400. Under this deferential standard, and in light of the similarity between the narrowed version of "coldly calculated" used at all stages of this case and in Joubert, the 1980 and 1995 sentencing panels adequately and constitutionally narrowed the "exceptional depravity" aggravator.

Perhaps the most unsupported pronouncement by the court today arises from its ruling on trial court authority to construe and apply a state sentencing statute. Saddled with the established validity of the Palmer factors, the court boldly states that the resentencing panel erred because it did not have the authority to further narrow the statute, that such action must only be undertaken at the appellate level. The court reaches back to Moore I to support this argument. Moore I stated, "a state supreme court may salvage a facially-vague statute by construing it to provide the sentencing body with objective criteria for applying the statute." 904 F.2d at 1229, ante at 14. This slender reed, quoted out of context, in no way supports the court's broad premise.

While it is certainly true that a state supreme court may construe a facially-vague statute in such a way as to render it constitutional, so may a state trial court. See, e.g., State v. Garza, 496 N.W.2d 448, 452 (Neb. 1993) (trial court must be allowed first attempt at constitutional interpretation to determine validity of statute). Cf. Beck v. Piatt, 101 Cal. Rptr. 236, 239 (Cal. Ct. App. 1972) (interpretation and applicability of statute is a question of law to be determined by trial court in "initial instance"); Dep't of Public Utils. v. Freedom of Info. Comm'n, 739 A.2d 328, 331 (Conn. App. Ct. 1999) (determination of meaning of statute is question of law within province of trial court and appellate court). Indeed, Moore II recognized this trial court authority when in support of its vagueness conclusions it stated "[n]o such

narrowing construction was given the [statutory] 'depravity' language, either by the *sentencing court* or the Nebraska Supreme Court." 951 F.2d at 897 (emphasis added).

The Nebraska Supreme Court, as early as <u>Rust</u>, specifically acknowledged a sentencing panel's authority to narrow a statutory aggravator when the court noted: "[w]e think the panel properly interpreted and applied the [29-2523(1)(d)] definition in this case." 250 N.W.2d at 874 (citing <u>Proffitt v. Florida</u>, 428 U.S. 242 (1976)). This circuit has recently observed that "[i]t is of course for the [state supreme court] to interpret and apply its own rules, and we have no power to redetermine questions of state law, including state procedural rules, as such." <u>Carter v. Bowersox</u>, 265 F.3d 705, 716 (8th Cir. 2001). Both before and after resentencing, the Nebraska Supreme Court has specifically recognized this lower court authority to interpret and apply legislatively enacted rules. <u>State v. Moore</u>, 502 N.W.2d at 229-30; 553 N.W.2d 120, 132-33 (Neb. 1996) (resentencing panel within its authority to define the exceptional depravity component).

Even assuming, in the face of this straightforward determination of Nebraska law, that the resentencing panel somehow did not have the authority to narrow the statute in the first instance, the Nebraska Supreme Court's subsequent ratification of the panel's formulation cures any possible defect. In Moore's direct appeal from the panel's resentence, the Nebraska Supreme Court held that the resentencing panel's definition of the coldly calculated factor was not vague, because it "provide[d] sufficient guidance to the sentencing authority 'so as to minimize the risk of wholly arbitrary and capricious action.'" <u>State v. Moore</u>, 553 N.W.2d at 132 (quoting <u>Gregg v. Georgia</u>, 428 U.S. 153, 189 (1976)). The Nebraska Supreme Court also found that the panel's formulation was not unconstitutionally overbroad since it required well more than the premeditation necessary to support a first-degree murder conviction. 553 N.W.2d at 133.

As earlier indicated, even the <u>Moore I</u> court recognized that "a state supreme court may salvage a facially-vague statute by construing it to provide the sentencing body with objective criteria for applying the statute." 904 F.2d at 1229. Requiring the Nebraska Supreme Court to now remand the case, with instructions to the sentencing panel to apply the narrowed and approved definition *that it has already applied,* seems unnecessarily and improperly circuitous.

Because both sentencing panels constitutionally narrowed the "exceptional depravity" statute, and the Nebraska Supreme Court ratified the narrowed formulations on direct appeal, I would affirm the well-reasoned judgment of the district court denying habeas corpus relief. Otherwise, the message emanating from the court today is that whatever the State of Nebraska chooses to do in this case, this court will find it wanting. With this communication I vigorously disagree. Accordingly, I dissent.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.

-27-