# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-4079

_____

| | | |
|---|---|---|
| Carey D. Moore, | * | |
| | * | |
| Appellant, | * | |
| | * | |
| v. | * | Appeal from the United States |
| | * | District Court for the District |
| Michael L. Kinney, Warden | * | of Nebraska. |
| of the Nebraska Penal and | * | |
| Correctional Complex, | * | |
| | * | |
| Appellee. | * | |

_____

Submitted: September 11, 2002

Filed:  February 10, 2003

_____

Before HANSEN, Chief Judge, HEANEY, McMILLIAN, BOWMAN, WOLLMAN,
BEAM, LOKEN, MORRIS SHEPPARD ARNOLD, MURPHY, BYE, RILEY,
MELLOY, SMITH, Circuit Judges.

_____

BEAM, Circuit Judge, with whom HANSEN, Chief Judge, BOWMAN, WOLLMAN,
LOKEN, MORRIS SHEPPARD ARNOLD, and RILEY, Circuit Judges, join.

In this death penalty matter, Carey D. Moore appeals the district court's[1] denial
of his 28 U.S.C. § 2254 petition for habeas corpus.  We affirm.

_____

[1]The Honorable Richard G. Kopf, Chief Judge, United States District Court for
the District of Nebraska.

## I.    BACKGROUND

The facts underlying Moore's initial conviction and sentencing in Nebraska state court in 1980 are undisputed and have been repeated, in some form, in no less than eight federal or state appellate court decisions.  Briefly, in August 1979, Moore purchased a handgun and set out to rob and kill Omaha cab drivers.  Moore carefully planned to select older targets because he thought it would be easier for him to shoot an older man rather than a man nearer his own age.  In carrying out this scheme, Moore called several cabs over a period of time and hid while watching them arrive, and depart, if the driver was young.  Moore confessed to the police that he felt an older victim would be an easier mark.  Using this approach, Moore selectively abducted and murdered cab driver Reuel Eugene Van Ness, Jr. on August 22, 1979, and Maynard Helgeland on August 27, 1979.

Moore was convicted of two counts of first-degree murder and was sentenced to death by a three-judge panel in 1980.  The Nebraska Supreme Court affirmed the convictions and sentences in State v. Moore, 316 N.W.2d 33 (Neb.), cert. denied, 456 U.S. 984 (1982).  Moore filed a motion for postconviction relief in 1982, which was denied by the state district court in 1983, and this denial was affirmed by the Nebraska Supreme Court in State v. Moore, 350 N.W.2d 14 (Neb. 1984).

Moore then filed a petition for writ of habeas corpus in the United States District Court for the District of Nebraska, which granted the writ in Moore v. Clarke, No. CV84-L-754 (D. Neb. Sept. 20, 1988).  This court affirmed, holding that the "exceptional depravity" component of the aggravating circumstance set forth in Neb. Rev. Stat. § 29-2523(1)(d)[2] was unconstitutionally vague, both on its face and as

_____

[2]Section 29-2523(1)(d) provides: "The murder was especially heinous, atrocious, cruel, or manifested exceptional depravity by ordinary standards of morality and intelligence."

interpreted by the Nebraska Supreme Court. Moore v. Clarke, 904 F.2d 1226, 1233 (8th Cir. 1990) (Moore I). The same panel published an opinion denying rehearing. 951 F.2d 895 (8th Cir. 1991).

On remand, the Nebraska Supreme Court declined to resentence Moore, and, instead, sent the matter to the state district court for resentencing. State v. Moore, 502 N.W.2d 227, 230 (Neb. 1993). A new three-judge sentencing panel of the state district court convened in 1994 and in April of 1995 again sentenced Moore to death. This decision was affirmed by the Nebraska Supreme Court in State v. Moore, 553 N.W.2d 120 (Neb. 1996) (per curiam), cert. denied, 520 U.S. 1176 (1997).

In early March 1997, the Nebraska Supreme Court established May 9, 1997, as Moore's execution date, and on April 30, 1997, Moore filed another state action for postconviction relief. On May 5, 1997, the Nebraska Supreme Court stayed Moore's execution and the state district court subsequently denied Moore's motion for relief without an evidentiary hearing. The Nebraska Supreme Court affirmed the denial of postconviction relief in State v. Moore, 591 N.W.2d 86 (Neb.), cert. denied sub nom., 528 U.S. 990 (1999). On October 5, 1999, Moore filed the current petition for writ of habeas corpus. See Moore v. Kinney, 119 F. Supp. 2d 1022 (D. Neb. 2000).

## II.    DISCUSSION

In 1990, as indicated, this court invalidated Moore's 1980 sentences stating that the "exceptional depravity" aggravator was unconstitutionally vague as written and construed. Moore I, 904 F.2d at 1233. In so holding, the court simply failed to correctly predict the direction the United States Supreme Court's death penalty jurisprudence would take. Indeed, the impression given by the Moore I court was that any narrowing construction of the "exceptional depravity" factor would fail to pass constitutional muster. Id. at 1235 (Floyd Gibson, J., dissenting) ("It seems to me that

the majority's approach in this case could defeat virtually any aggravating circumstance statute, and by the use of semantics make a dead letter of any death statute."). However, one month after <u>Moore I</u> was issued, the United States Supreme Court upheld the validity and constitutionality of the State of Arizona's narrowing scheme in <u>Walton v. Arizona</u>, 497 U.S. 639 (1990)[3], and in <u>Lewis v. Jeffers</u>, 497 U.S. 764, 777-78 (1990) (stating that Arizona Supreme Court construed the "especially heinous, cruel *or depraved*" aggravating circumstance in a constitutionally permissible manner) (emphasis added). The specific Arizona aggravating factor considered in these two cases was almost identical to Nebraska's "exceptional depravity" formulation. As a result of our 1990 misstep in <u>Moore I</u>, taken over the vigorous objection of Judge Floyd Gibson, Moore's case has been adrift in the state and federal courts for the past twelve-plus years. The court, sitting en banc, is obviously not bound by the 1990 <u>Moore I</u> decision. Therefore we begin with a clean slate as we examine Moore's 1995 resentencing. As we do so, we note that Moore's current habeas corpus petition, filed in 1999, is governed by the standards set forth in 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996.

---

[3]<u>Walton</u> was partially overruled on other grounds by <u>Ring v. Arizona</u>, 122 S. Ct. 2428 (2002). Decided in June 2002, <u>Ring</u>, and its holding that a jury, not a judge, must make any factual findings which increase a sentence from imprisonment to death, is not implicated in this case. The Supreme Court did not, and has not, expressly made the ruling in <u>Ring</u> retroactive. <u>See, e.g.</u>, <u>Ring</u>, 122 S. Ct. at 2449-50 (O'Connor, J., dissenting) (noting that current state death row inmates will not be able to invoke the principles of <u>Ring</u> and citing <u>Teague v. Lane</u>, 489 U.S. 288 (1989)). Absent an express pronouncement on retroactivity from the Supreme Court, the rule from <u>Ring</u> is not retroactive. <u>See</u> <u>Tyler v. Cain</u>, 533 U.S. 656, 663 (2001) (holding that "a new rule is not 'made retroactive to cases on collateral review' unless the Supreme Court holds it to be retroactive") (quoting 28 U.S.C. § 2244(b)(2)(A)).

The two issues certified for appeal in this case center around whether Neb. Rev. Stat. § 29-2523(1)(d) is unconstitutional: (1) on its face because it remains open-ended and vague, and it fails to channel application of the death penalty; and (2) as applied by the Nebraska courts because the resentencing panel's construction of the statute denied Moore due process. We cannot grant Moore habeas corpus relief on any claim that was "adjudicated on the merits in State court proceedings unless the adjudication of the claim . . . resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). The first step in this analysis is to compare the state court decision with applicable Supreme Court precedent on the subject in question. The state court decision is only "contrary to" established Supreme Court precedent if the state court applied a rule that directly contradicts Supreme Court precedent containing "materially indistinguishable" facts. Williams v. Taylor, 529 U.S. 362, 405 (2000) (O'Connor, J., for the Court). And, a state court's application of the law is not "unreasonable" if it is merely incorrect or erroneous in this court's independent judgment; rather, it must be objectively unreasonable. Id. at 410 (O'Connor, J., for the Court). Nor is citation to any particular Supreme Court case necessary, "so long as neither the reasoning nor the result of the state-court decision contradicts" Supreme Court precedent. Early v. Packer, 123 S. Ct. 362, 365 (2002) (per curiam). Factual findings by the state court "shall be presumed to be correct," and this presumption will be rebutted only "by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). The district court's legal conclusions are reviewed de novo, McDowell v. Leapley, 984 F.2d 232, 233 (8th Cir. 1993), and its factual findings are reviewed for clear error, Couch v. Trickey, 892 F.2d 1338, 1341 (8th Cir. 1989).

With these standards in mind, we turn to Moore's 1995 resentencing, and the subsequent Nebraska Supreme Court adjudication of his current claims. Upon remand to the Nebraska Supreme Court for resentencing following our 1990 decision, the state asked the court to define "exceptional depravity" in a way that would satisfy

the federal court's objections to the statute's constitutionality, to apply the newly constructed definition to the facts of the case, to reweigh the aggravating and mitigating factors, and to resentence Moore. State v. Moore, 502 N.W.2d at 228. As earlier indicated, the supreme court declined these requests and remanded the case to the state district court for resentencing. Id.

## A.

At resentencing, the state district court applied its own narrowed construction of "exceptional depravity" to the facts of Moore's case. State v. Moore, 553 N.W.2d at 132. The resentencing panel determined that the definition of "exceptional depravity" should include the following:

> (1) the killer's infliction of prolonged or significant physical violence, such as sexual abuse, on the victim after the victim's death or loss of consciousness; (2) the killer's mutilation or dismemberment of the victim's body after death; . . . (3) the apparent relishing of the murder by the killer . . . . [and (4)] the killer's cold, calculated planning of the victim's death, as exemplified by experimentation with the method of causing the victim's death or by the purposeful selection of a particular victim on the basis of specific characteristics such as race, gender, creed, sexual orientation, disability, or age.

Id. (emphasis omitted). The resentencing panel concluded that the fourth factor was present due to Moore's selection of his victims on the basis of age. Id. Based on the presence of this and other aggravating factors which outweighed the mitigating factors, the panel resentenced Moore to death.

The Nebraska Supreme Court affirmed the death sentence on direct appeal, id., and it later affirmed the denial of postconviction relief, 591 N.W.2d 86. On direct appeal, the court considered and rejected Moore's claim that, at the time of resentencing, there was no constitutionally viable definition of "exceptional

-6-

depravity" available to the resentencing panel. The court first cited a litany of its own cases that have approved the "cold, calculated" formulation. 553 N.W.2d at 130. The court then pointed out that "exceptional depravity" was further narrowed with the advent of the five-factor test first enunciated in State v. Palmer, 399 N.W.2d 706, 731-32 (Neb. 1986), cert. denied, 484 U.S. 872 (1987).  Citing Walton v. Arizona, Lewis v. Jeffers, and this court's decision in Joubert v. Hopkins, 75 F.3d 1232 (8th Cir. 1996), cert. denied, 518 U.S. 1029 (1996), the court concluded that the Palmer factors had been constitutionally validated and the resentencing panel could have applied either the "cold, calculated" test or the Palmer factors to define "exceptional depravity."  553 N.W.2d at 131.

The court noted that, despite the existence of a constitutionally viable definition of "exceptional depravity," the resentencing panel, apparently out of an abundance of caution due to the confusing state of the law arising from our 1990 opinion, undertook to further narrow this aggravating factor as outlined above. Id. at 131-32.  The resentencing panel was within its authority to do so, the court noted, because under Nebraska law, in the absence of clear precedent, a trial court must construe a statute according to its own understanding of it. Id. at 132.

The court next turned to the merits of Moore's claim that the formulation actually applied by the resentencing panel was unconstitutionally vague and overbroad.  The court found that the "cold, calculated" formulation, restricted to a situation where the defendant chose his victims on the basis of age, was sufficiently narrow to avoid a vagueness challenge.  This formulation "provide[d] sufficient guidance to the sentencing authority 'so as to minimize the risk of wholly arbitrary and capricious action.'" Id. (quoting Gregg v. Georgia, 428 U.S. 153, 189 (1976)). Citing Gregg and Furman v. Georgia, 408 U.S. 238 (1972) (per curiam), the Nebraska Supreme Court found that the resentencing panel's definition provided a meaningful distinction between the cases which impose the death penalty and those that do not.

553 N.W.2d at 132-33. Nor was the formulation overbroad, as it applied only to a subclass of defendants convicted of first-degree murder. Id. at 133.

The Nebraska Supreme Court's consideration of the merits of Moore's claim is, at the very least, a *reasonable* application of Supreme Court precedent. The court identified the relevant Supreme Court precedent–Gregg and Furman–and reasonably applied it to Moore's case. We agree with the Nebraska Supreme Court's reasoning. The principal objective of a vagueness challenge is to ensure that the state provides a process that is "neutral and principled so as to guard against bias or caprice in the sentencing decision." Tuilaepa v. California, 512 U.S. 967, 973 (1994). So long as the sentencer is capable of understanding the core meaning of the challenged factors, the vagueness challenge will fail. Id.

Thus, the key inquiry concerning whether the "cold, calculated" formulation is constitutional is not the specific substance of that narrowed definition, but simply whether the sentencing process is infected with bias or caprice. This is the "controlling objective when we examine eligibility and selection factors for vagueness." Id. The vagueness review is deferential, however, and "[a]s long as an aggravating factor has a core meaning . . . capable of understanding, it will pass constitutional muster." Jones v. United States, 527 U.S. 373, 400 (1999) (Thomas, J., plurality). Furthermore, an aggravating factor must be sufficiently narrow so that it does not apply to everyone convicted of first-degree murder. Tuilaepa, 512 U.S. at 972. Under this deferential standard, the resentencing panel adequately and constitutionally narrowed the "exceptional depravity" aggravator.

The resentencing panel defined "exceptional depravity" to include "the killer's cold, calculated planning of the victim's death, as exemplified by experimentation with the method of causing the victim's death or by the purposeful selection of a particular victim on the basis of specific characteristics such as race, gender, creed, sexual orientation, disability, or age." State v. Moore, 553 N.W.2d at 132 (emphasis

omitted). This is a definition which has a core meaning that is capable of being understood and that will not lead to bias or caprice. Furthermore, the definition is not overbroad. Moore's decision to choose his victims on the basis of a specific characteristic–their advanced ages–separates his case from murderers who made no such decision. Thus, the Nebraska Supreme Court's resolution of this issue was clearly not an unreasonable application of United States Supreme Court precedent and will not be disturbed on habeas review by this court.

Moore, to the contrary, argues that the resentencing panel's definition of "exceptional depravity" was unconstitutionally vague, and he argues that his claim is governed by Furman v. Georgia, 408 U.S. 238. In Furman, the Supreme Court, in a one paragraph per curiam opinion (followed by nine separate concurring and dissenting opinions), held that the application of the death penalty by the states of Texas and Georgia was unconstitutional cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments. Id. at 239-40. Supreme Court opinions following Furman have clarified that a capital sentencing scheme must not be "arbitrary and capricious," Gregg, 428 U.S. at 189 (Stewart, J., concurring), nor leave the sentencer with "standardless and unchanneled" discretion, Godfrey v. Georgia, 446 U.S. 420, 429 (1980) (Stewart, J., plurality). See Maynard v. Cartwright, 486 U.S. 356, 362 (1988). At the time of Furman, in 1972, the Georgia and Texas sentencing schemes had no statutory aggravators whatsoever. The statutes merely provided a capital jury the choice among death, life imprisonment, or five to twenty years of imprisonment. 408 U.S. at 308 nn.8-9 (Stewart, J., concurring). The various concurring opinions in Furman came to the general conclusion that imposition of the death penalty in these (and similarly situated) jurisdictions was random, and akin to "being struck by lightning," with race being the only discernible factor playing a role in the selection for the death penalty. Id. at 309-10 (Stewart, J., concurring).

In response to Furman, the legislatures in death penalty states which had previously allowed absolute discretion to the sentencer were "compelled . . . to

-9-

specify particular 'aggravating factors' that must be found before the death penalty can be imposed." Ring, 122 S. Ct. at 2444 (Scalia, J., concurring). Whether "erroneously coerced" to do so or not, id. at 2445 (Scalia, J., concurring), the fact remains that death penalty states, including Nebraska,[4] did specify these aggravating factors. Thus, Moore's claim may be a "Furman" claim in the loose sense that he is asserting that Nebraska's application of its death penalty to him is arbitrary, but the specifics of his constitutional argument are not controlled by Furman.

Moore also vigorously argues that Maynard v. Cartwright, 486 U.S. 356, controls the outcome here. The contention being, apparently, that the "exceptional depravity" component of section 29-2523(1)(d) is not reasonably susceptible of a constitutionally sufficient narrowing under any circumstance. This argument seriously misreads Cartwright. In Cartwright, the Supreme Court found the "especially heinous, atrocious, or cruel" portion of a statutory aggravator to be impermissibly vague. 486 U.S. at 362-64. However, the Court also held that this same aggravating factor *could* be constitutionally narrowed by requiring a finding of torture or serious physical abuse, for example, or some other formulation. Id. at 364-65. The Cartwright aggravator, "especially heinous, atrocious, or cruel," if anything, paints with a broader brush than Nebraska's "exceptional depravity" component. So, the validity of the resentencing panel's narrowing construction, achieved through the requirement of a selection of the victims on the basis of age, is actually supported by Cartwright. The Cartwright decision contemplated such a narrowing. Id. Thus, Cartwright, given its best gloss for Moore, does no more for his claim than Tuilaepa, or even Godfrey and Gregg. Each of these Supreme Court decisions reiterate that the sentencer cannot have unfettered discretion, but instead must be guided by an aggravator with a core meaning presented through a definition capable of

---

[4]The aggravating factors can be determined at either the guilt phase as part of the definition of the crime, or at the penalty phase as a separate sentencing factor, or both. Tuilaepa, 512 U.S. at 972. Nebraska's aggravating factors are determined at sentencing. See Neb. Rev. Stat. §§ 28-303, 29-2523.

comprehension, and considered via a process not infected with bias or caprice. All of these conditions were met in the 1995 resentencing. Thus, Moore's first ground for habeas corpus relief is without merit.

**B.**

Moore's second contention is that his due process rights were violated because he lacked adequate notice of the resentencing panel's "exceptional depravity" formulation. The Nebraska Supreme Court noted that in the context of notice to a criminal defendant at or prior to sentencing, the Fourteenth Amendment requires

> (1) that the language of the statute and previous constructions of it in existence at the time of the crime provided reasonable notice to a person of ordinary intelligence of the scope of criminal behavior reached by the statute and (2) that any new construction of the statute which occurs after the crime does not increase the scope of behavior considered under the particular aggravating circumstance.

553 N.W.2d at 134 (citing Cartwright, 486 U.S. 356; Grayned v. City of Rockford, 408 U.S. 104 (1972); Bouie v. City of Columbia, 378 U.S. 347 (1964)).

The Nebraska court found that both prongs of the notice requirement were met, and it described Moore's knowledge regarding the "exceptional depravity" aggravator at the time of the 1995 resentencing as follows:

> Prior to Moore's hearing, a person of ordinary intelligence in Moore's situation would have been aware of the following information regarding the exceptional depravity prong of aggravating circumstance § 29-2523(1)(d): (1) the language of the statute; (2) our pre-Palmer constructions of exceptional depravity; (3) the factors stated in Palmer; (4) our statement in State v. Joubert, 224 Neb. 411, 432, 399 N.W.2d 237, 251 (1986), that exceptional depravity was also demonstrated by

-11-

the fact that the murders in that case were "coldly planned as part of a repetitive program of self-gratification, involving immature victims selected on the basis of their availability at a time when the likelihood of detection was slight"; (5) the previous holding in State v. Moore, 210 Neb. 457, 316 N.W.2d 33 (1982), cert. denied 456 U.S. 984, 102 S. Ct. 2260, 72 L. Ed. 2d 864 (the victims were selected on the basis of certain characteristics, including age); and (6) U.S. Supreme Court holdings affirming the factors annunciated in State v. Gretzler, 135 Ariz. 42, 659 P.2d 1 (1983), cert. denied 461 U.S. 971, 103 S. Ct. 2444, 77 L. Ed. 2d 1327, and followed in Palmer, which were held to be constitutional; Walton v. Arizona, 497 U.S. 639, 110 S. Ct. 3047, 111 L. Ed. 2d 511 (1990); Lewis v. Jeffers, 497 U.S. 764, 110 S. Ct. 3092, 111 L. Ed. 2d 606 (1990); Arave v. Creech, 507 U.S. 463, 113 S. Ct. 1534, 123 L. Ed. 2d 188 (1993).

553 N.W.2d at 134-35.

The Nebraska Supreme Court found that, as a consequence of the above-described knowledge, Moore was not deprived of notice in violation of the Due Process Clause. Id. at 135. The Nebraska Supreme Court's adjudication of this issue was clearly not an unreasonable application of federal law as established by the Supreme Court. The court correctly identified the Supreme Court's rule regarding notice of a statute's subsequent construction as it may affect sentencing and it reasonably applied this precedent to the factual history in Moore's case.

As the Nebraska Supreme Court implicitly observed, Moore's due process notice claim could potentially involve two different time frames. First, Moore must have had adequate notice that his criminal conduct in 1979 would subject him to the death penalty. The second inquiry involves the notice Moore had regarding the resentencing panel's narrowing formulation of the "exceptional depravity" factor. In both instances, Moore had fair warning that his conduct would result in the death sentence that he received.

-12-

While the 1979 time frame is not an issue in this appeal, when Moore committed these murders, the "cold, calculated" formulation of "exceptional depravity" had been in use for two years. Nebraska first used the "cold, calculated" formulation in two cases issued on the same day in 1977, State v. Rust, 250 N.W.2d 867 (Neb. 1977), and State v. Holtan, 250 N.W.2d 876 (Neb. 1977). In Holtan, the court stated that because the defendant killed and attempted to kill unresisting victims of robbery, the "act was totally and senselessly bereft of any regard for human life." 250 N.W.2d at 880. Although the court did not use the terms "cold" and "calculated" in Holtan, in Rust the court stated, "[t]oday in Holtan, we have also said that [exceptional depravity] exists where the murder is so coldly calculated as to indicate a state of mind totally and senselessly bereft of regard for human life." 250 N.W.2d at 874 (affirming death sentence where defendant shot several times and killed civilian bystander who had come to aid of wounded police officers during "shoot out").

The 1993-1995 resentencing time frame is at issue. Moore briefly contended at the resentencing hearing in October of 1994 and now contends in briefing in this appeal that Bouie, 378 U.S. 347; Douglas v. Buder, 412 U.S. 430 (1973), and, apparently, the Nebraska Supreme Court's recognition "that any new construction of the statute which occurs after the crime [must] not increase the scope of behavior considered under a particular aggravating circumstance," State v. Moore, 553 N.W.2d at 134, entitled him to know beforehand the precise definition of "exceptional depravity" that would ultimately be applied to him by the resentencing panel. Moore describes this claim as a due process right analogous to the protections advanced by the Ex Post Facto Clause of the Constitution. We disagree with this characterization for reasons more completely discussed later, but, we find that he did, in any event, have more than adequate notice.

We digress briefly, however, to note that the holdings in Bouie and Douglas and the contents of the referenced Nebraska Supreme Court ruling are factually

inapposite in the circumstances of this case. The resentencing panel's "new construction" of the statute was designed to and actually did narrow and diminish, rather than "increase" the scope of actionable behavior considered by the sentencers. Moore offers no Supreme Court precedent involving either due process or ex post facto jurisprudence that supports his contention under the facts of this case.

As a peripheral matter, Moore also claims that any panel formulation could never serve as adequate notice without it having been previously approved by the Nebraska Supreme Court. He, of course, offers no supporting precedent or policy justification for this notion, and we believe there is none. At the very least, the Nebraska Supreme Court's ruling to the contrary is not an unreasonable application of established Supreme Court law. Further, we earlier disposed of this contention when we validated the Nebraska Supreme Court's ruling that "[t]he resentencing panel was within its authority" to narrow and apply the aggravating factor as it did. Ante at 7-8.

We now return more directly to Moore's notice argument. The district court carefully outlined the prior notice Moore received concerning the narrowed aggravator. The district court noted and discussed the Nebraska Supreme Court's holding in Joubert, 399 N.W.2d 237, wherein the court found that the murders manifested "exceptional depravity," in part because the murders "were coldly planned as part of a repetitive program of self-gratification, involving *immature* victims selected on the basis of their availability." Id. at 251-52 (emphasis added). And, on habeas review, this court held that the narrowed definition of "exceptional depravity" applied by the Nebraska courts in Joubert was "clearly constitutional." Joubert v. Hopkins, 75 F.3d at 1244. Cf. Tuilaepa, 512 U.S. at 977 ("there is no suggestion that the term 'age' is vague").

Also as noted by the district court, after evidence was presented to the rehearing panel, a member judge asked: "What about the testimony that [Moore]

-14-

selected older men because he didn't want to kill younger ones?"  This inquiry occurred several months before sentence was actually imposed and the record is devoid of any request by Moore to offer further evidence[5] or to make additional argument to rebut the thrust of this question.  Moore did argue at that time that the panel could not "on [its] own come up with a definition [of exceptional depravity]."  Moore v. Kinney, No. 4:99CV 3263, Sentencing Transcript at 275 (Neb. D. Ct. Oct. 14, 1994).  However, as earlier noted, the panel had the authority to do so and did do so, with  full affirmance by the Nebraska Supreme Court and, now, this court.  Accordingly, Moore had ample notice in 1994 and 1995 that the state planned to pursue a narrowed definition of "exceptional depravity" which would include the notion that Moore selected his victims on the basis of their ages.  Indeed, this is the formulation that the state had advanced in the prior fifteen years of litigation, and it was unreasonable for Moore not to assume that the state would persist with this theory of the case.  The district court's citations to the examples in the record showing the defense's knowledge in this regard bear this out.  119 F. Supp. 2d at 1033-36.  In sum, the Nebraska Supreme Court's adjudication of Moore's due process claim was not an unreasonable application of federal law as established by the Supreme Court, and we cannot grant habeas corpus relief on Moore's notice claim.

We also reject Moore's due process claim for two additional reasons.  First, even if Moore was totally without notice of the resentencing panel's legal conclusions, Northern Nat. Gas Co. v. O'Malley, 277 F.2d 128, 137 (8th Cir. 1960) (holding that a determination of the meaning of words in a statute or regulation presents a legal question), arising from the panel's narrowing construction of the "exceptional depravity" component of section 29-2523(1)(d), he was accorded more

---

[5]During or since the evidentiary hearing and argument before the resentencing panel in October of 1994, including during briefing and argument to the district court and this court, Moore has never posited, advanced or suggested the nature or particulars of any evidence that he could or would adduce that might bear on the question of law surrounding the narrowing of the aggravator by the panel.

-15-

than adequate due process. He could have asked the resentencing panel for the opportunity to further argue this question of law, but he apparently did not. He received, as required by Nebraska law, an automatic direct appeal to the Nebraska Supreme Court, 553 N.W.2d 120, and the Supreme Court long ago held that "proceedings in [an] appellate tribunal are to be regarded as a part of the process of law . . . to be considered in determining any question of alleged deprivation of [a defendant's] life or liberty contrary to the Fourteenth Amendment." Frank v. Mangum, 237 U.S. 309, 327 (1915). Beyond this, Moore has been able to assert his legal challenge at a state trial level postconviction proceeding which was fully reviewed by the Nebraska Supreme Court, 591 N.W.2d 86, and, of course, by way of habeas review in the district court and in this court. At each proceeding he has been able to attack the validity of the resentencing panel's formulation.

Finally, and perhaps most importantly, even if Moore suffered a constitutional due process violation, which he clearly did not, we see no reasonable basis for affording him habeas corpus relief. As outlined in Part II.A. above, we today determine that the resentencing panel's legal conclusions were well within the contours established by Supreme Court precedent. It is difficult to discern harm to Moore, other than the prejudice that may follow from any correct application of the law. Prior notice of a lawful interpretation of the law is not required by the Constitution, even in a death penalty case. Lastly, we repeat that even an incorrect or erroneous application of the law by the Nebraska courts in defining the "exceptional depravity" aggravator provides Moore no relief. Williams v. Taylor, 529 U.S. at 410 (O'Connor, J., for the Court).

## III.  CONCLUSION

Moore's 1995 resentencing passes constitutional muster. We therefore affirm.

HEANEY, Circuit Judge, with whom McMILLIAN, MURPHY, and BYE, Circuit Judges, join, dissenting and with whom MELLOY and SMITH, Circuit Judges, join in Section II.B.2.

Today the majority takes an unprecedented step: it permits trial courts to decide for themselves what criteria would support a death sentence *after* hearing all the evidence on the matter, and then conclude if the evidence presented fits within their newly-established criteria. I am bewildered that a majority of this court could hold that such a procedure passes constitutional muster. To me, it is a clear due process violation, for it deprives defendants of meaningful notice of what facts of their case might result in their execution. Remaining true to both panel decisions in this case, as well as to relevant Supreme Court precedent on the matter, I continue to believe that Nebraska has not narrowed its "exceptional depravity" aggravator in a constitutionally acceptable manner. The aggravator remains just as open-ended as it was at Moore's original sentencing. I would reverse the district court, and remand the matter for resentencing without reliance on the "exceptional depravity" aggravator. Because the majority's cursory factual recitation understates the history of this case and Nebraska's unsuccessful struggle to bring its death penalty aggravator into compliance with the Constitution, I begin with a more thorough examination of the case.

I.    BACKGROUND

For well over twenty years, the state of Nebraska has been trying to execute Carey Dean Moore. He was first sentenced to death by a three-judge panel in 1980 after the panel determined that the two murders he committed manifested "exceptional depravity," an aggravating factor that, if found, supports imposition of the death penalty under Nebraska's statutory scheme. The panel recognized that the "exceptional depravity" aggravator had been interpreted by the Nebraska Supreme Court to include murder that "is so coldly calculated as to indicate a state of mind

-17-

totally and senselessly bereft of regard for human life." State v. Moore, Order of Sentence at 8 (Dist. Ct. Douglas County June 20, 1980) (citing State v. Holtan, 250 N.W.2d 876, 880 (Neb. 1977)); see also State v. Rust, 250 N.W.2d 867, 874 (Neb. 1977). Based on the evidence that Moore had planned his crimes for a day or two and sought victims that were older than he, the sentencing panel determined that Moore's murders were "so coldly calculated as to indicate a state of mind totally and senselessly bereft of all regard for human life, thus manifesting exceptional depravity." State v. Moore, Order of Sentence at 10 (Dist. Ct. Douglas County June 20, 1980) (internal quotation marks omitted). The Nebraska Supreme Court, in a divided opinion, affirmed the convictions and sentences. See State v. Moore, 316 N.W.2d 33 (Neb. 1982).

In 1988, Moore sought federal habeas relief in district court. The district court[6] assigned the matter to Magistrate David L. Piester for a Report and Recommendation. He recommended that the writ be granted on the basis that Nebraska's "exceptional depravity" aggravator was unconstitutionally vague both facially and as narrowed by the Nebraska Supreme Court. Judge Urbom, a highly respected district court judge who has served since 1970, accepted the magistrate's analysis and conclusions, recognizing that while the Nebraska Supreme Court purported to constitutionally narrow the "exceptional depravity" aggravator in Holton and Rust, the new interpretation "offer[ed] little if anything, objective in nature" to guide the sentencer. Moore v. Clark, No. CV84-L-754, slip op. at 4 (D. Neb. Sept. 20, 1988). The district court then examined the Nebraska Supreme Court's 1986 decision in State v. Palmer, 399 N.W.2d 706 (1986), which suggested a new, five-prong interpretation of the "exceptional depravity" aggravator.[7] Notably missing from this new interpretation

---

[6]The Honorable Warren K. Urbom, United States District Court for the District of Nebraska.

[7] In Palmer, the Nebraska Supreme Court held "that 'exceptional depravity' in a murder exists when it is shown, beyond a reasonable doubt, that the following

-18-

was any mention of the "coldly calculated" language from the <u>Rust</u> decision, which was relied upon by the sentencing panel in its imposition of the death penalty. Observant that <u>Palmer</u> was a divergence from pre-1986 interpretations, the court summarized the confused history of the Nebraska Supreme Court's interpretation of the aggravator in the following manner:

> If the 1986 [<u>Palmer</u>] definition intended to abandon its pre-1986 efforts at guidance, it did not say so distinctly. If it did not so intend, a sentencer now has a series of suggestions, some objective and some not, from which to choose, without assurance that the series is complete.

<u>Moore v. Clark</u>, No CV84-L-754, slip op. at 4 (D. Neb. Sept 20, 1988). The court concluded that "as earnest as the Supreme Court of Nebraska has been in its difficult task to bring Nebraska's statutory language of this aggravating factor into constitutional objectivity, a sentencer is left with only scattered and uncertain fragments for a definition." <u>Id.</u> at 5. Recognizing that a death penalty sentencing system that fails to adequately channel the sentencer's discretion is constitutionally infirm, the court was left with no alternative but to grant the writ.

The state timely appealed. In a 1990 decision, this court affirmed, concluding that the Nebraska Supreme Court had failed to provide sufficient guidance to the sentencing panel "to cure the constitutional deficiencies of this vaguely worded statute." <u>Moore v. Clark</u>, 904 F.2d 1226, 1230 (8th Cir. 1990) (<u>Moore I</u>). Judge John R. Gibson undertook a careful examination of the words and phrases at issue, and agreed with the district court that the phrase "so coldly calculated as to indicate a state of mind totally and senselessly bereft of regard for human life" had nominal

---

circumstances, either separately or collectively, exist in reference to a first degree murder: (1) apparent relishing of the murder by the killer; (2) infliction of gratuitous violence on the victim; (3) needless mutilation of the victim; (4) senselessness of the crime; or (5) helplessness of the victim." 399 N.W.2d at 731-32.

value in channeling the sentencer's discretion. Id. As such, the "exceptional depravity" aggravator remained unconstitutionally vague, despite the Nebraska Supreme Court's attempt to narrow it through the "coldly calculated" language. Id. Additionally, the panel determined that Palmer could not be accurately characterized as clarifying existing state law. Id. at 1231. Rather, "[t]o us, the greater significance of Palmer is that it demonstrates the Nebraska Supreme Court's exhaustive efforts to redefine 'exceptional depravity'; this simply underscores our conclusion that the phrase is unconstitutionally vague." Id. at 1232. The court continued:

> [o]ur examination of the state court precedent available to guide sentencing bodies in Nebraska which are required to determine whether the murder "manifested exceptional depravity" leads us to conclude, as did the district court, that, as earnestly as the Nebraska Supreme Court has attempted to provide objective criteria, the unconstitutional vagueness of the critical language in this statute remains. A sentencing body may glean only subjective and unilluminating fragments from existing case law.

Id. (footnotes omitted). The panel further recognized, consistent with Maynard v. Cartwright, 486 US. 356 (1988), that the Nebraska Supreme Court's affirmance of Moore's death sentence was improper, for it merely looked at all of the facts and circumstances of Moore's case and decided what sentence should follow. Moore I, 904 F.2d at 1233. Harkening back to the Tenth Circuit's en banc decision in Cartwright, the panel agreed that "[t]he discretion of a sentencer who can rely upon all of the circumstances of a murder is as complete and as unbridled as the discretion afforded to the jury in Furman." Id. (quoting Maynard v. Cartwright, 822 F.2d 1477, 1491 (10th Cir. 1987) (en banc), *aff'd*, 486 U.S. 356 (1988)).

As the majority correctly notes, following the 1990 panel decision of this court, the Supreme Court handed down two cases that dealt with the narrowing of an unconstitutionally vague death penalty aggravating factor. See Walton v. Arizona, 497 U.S. 639 (1990) (upholding Arizona's narrowed construction of its facially vague

-20-

death penalty aggravating factor); <u>Lewis v. Jeffers</u>, 497 U.S. 764 (1990) (same).[8] The state promptly petitioned for rehearing with suggestions for rehearing en banc, arguing that, as the majority now posits, the 1990 panel "simply failed to predict the direction the United States Supreme Court's death penalty jurisprudence would take" in these two cases. <u>Ante</u>, at 3. In light of <u>Walton</u> and <u>Jeffers</u>, the panel accepted additional briefing on the effect, if any, that these two decisions would have on Moore's case. Giving full credence to the recent decisions of the Supreme Court, the panel found its decision to be fully consistent with both <u>Walton</u> and <u>Jeffers</u>, and denied the petition for rehearing. <u>See</u> <u>Moore v. Clarke</u>, 951 F.2d 895 (8th Cir. 1991). The United States Supreme Court denied the state's petition for certiorari. <u>Clark v. Moore</u>, 504 U.S. 930 (1992). Accordingly, our 1990 opinion stood, and the matter was remanded to the Nebraska courts.

Upon remand to the Nebraska Supreme Court for resentencing, the state requested that the court redefine the "exceptional depravity" aggravator in a way that would satisfy the federal court's objections to its constitutionality, apply the newly constructed definition to the facts of Moore's case, reweigh the statutory aggravating and mitigating factors, and resentence Moore. <u>See</u> <u>State v. Moore</u>, 502 N.W.2d 227, 228 (Neb. 1993). Despite our suggestion that the Nebraska Supreme Court could salvage the "exceptional depravity" aggravator "by construing it to provide the sentencing body with objective criteria for applying the statute," <u>Moore I</u>, 904 F.2d at 1229 (citing <u>Godfrey v. Georgia</u>, 446 U.S. 420, 423 (1980)), the Nebraska Supreme Court expressly refused to redefine the aggravator, and instead remanded the case to the district court for resentencing "in the interest of judicial economy," <u>Moore</u>, 502

[8]<u>Walton</u> was overruled recently by the Supreme Court in <u>Ring v. Arizona</u>, 122 S. Ct. 2428 (2002). <u>Ring</u> effectively outlaws Nebraska's capital sentencing system by requiring that death penalty determinations be made by a jury, rather than a judge or panel of judges. <u>Id.</u> at 2443. Because no <u>Ring</u> issue was certified for appellate review, the question of whether or not it has applicability to Moore's case or similar cases remains open.

N.W.2d at 228, 230.  In so doing, the state supreme court gave no advance guidance to the resentencing panel as to what interpretation of the constitutionally defunct aggravator might salvage it.

The resentencing panel, "left with an ineffective and constitutionally infirm interpretation of 'exceptional depravity' as it proceed[ed] to determine the sentences to be imposed on Carey Dean Moore," fashioned its own construction of the aggravator.  State v. Moore, Order of Sentence at 12 (Dist. Ct. Douglas Co. Apr. 21, 1995).  With no "effective appellate definition" of the aggravator, the resentencing panel made up a new one that considered the presence of four factors: (1) the killer's infliction of violence on the victim after the victim had died or lost consciousness; (2) the killer's mutilation or dismemberment of the victim's body after death; (3) the apparent relishing of the murder by the killer; and (4) "the killer's cold, calculated planning of the victim's death as exemplified . . . by the purposeful selection of a particular victim on the basis of specific characteristics such as race, gender, creed, sexual orientation, disability, or age."  Id. at 12-14.  The panel then determined that this newly constructed aggravator applied to Moore because he picked older victims, and resentenced Moore to death.

Moore appealed and the Nebraska Supreme Court affirmed.  The court suggested that the resentencing panel's new construction was unnecessary, stating for the first time its belief that the panel "could have applied the Palmer factors."  State v. Moore, 553 N.W.2d 120, 131 (Neb. 1996).  In the same opinion, the court recognized the particular newly-constructed aggravator found present in Moore's case "was not based on Palmer, *but on the 'coldly calculated' language that the Eighth Circuit had disapproved.*"  Id. at 132 (emphasis added).  Nonetheless, the court affirmed the death sentence because the panel had, in its view, further narrowed this construction by limiting it to situations where the defendant picked the victim based on some specific characteristic, such as age.  Id.

-22-

Once again, Moore sought habeas relief in federal district court.[9]  Again, the matter was assigned to Magistrate Piester for a Report and Recommendation.  He recommended that the petition for writ of habeas corpus be granted for two reasons: 1) defining exceptional depravity to include the purposeful selection of the victim on the basis of some open-ended list of specific characteristics failed to properly channel the sentencer's discretion, contrary to Supreme Court precedent; and 2) the panel's post hoc application of its newly-constructed aggravator violated Moore's due process rights by depriving him of notice and an opportunity to respond.  See Moore v. Kinney, No. 4:99CV3263, slip op. at 21-25 (D. Neb. Sept. 18, 2000) (Order, Report and Recommendation).  "Nothing has changed in the present litigation," Magistrate Piester explained:

> The Nebraska Supreme Court has neither abandoned nor expressed a desire to abandon pre-Palmer constructions that have been held to be unconstitutionally invalid. . . . This reluctance of the state's supreme court to abandon prior constructions has left the sentencer . . . with a series of suggestions, some objective and some not, from which to choose, without assurance that the series is complete. . . . Therefore, I conclude the resentencing panel committed constitutional error in considering this aggravator to resentence the petitioner.

Id. at 17-18 (citations and internal quotation marks omitted).  With regard to the specific aggravator applied to Moore, the magistrate found it failed to channel the sentencer's discretion:

> Another troubling aspect of the resentencing panel's sub-prong is that it is, itself, open ended.  The sub-prong is worded as "purposeful selection of the victim on the basis of specific characteristics such as race, gender, creed, sexual orientation, disability, or age."  The use of "characteristics" implies something about the victim which makes that

_____

[9]The Honorable Richard G. Kopf, United States District Court for the District of Nebraska.

-23-

person one of a class of persons, seemingly identifiable by an unalterable condition, but that is not altogether clear. What other "characteristics" might be included? A killer may have a "purpose" of ridding the world of a class of persons he or she finds unworthy of life, but who do not fit these classifications. The use of the "such as" language opens this factor to a myriad of seemingly limitless applications.

Id. at 21.

The magistrate also determined that the resentencing panel fashioned its new construction to fit the facts of Moore's case: "The panel reviewed the facts of petitioner's case . . . and then, for all practical purposes, concluded that those facts made out the 'exceptional depravity' aggravator by creating the 'selection of the victim' aggravator." Id. at 22. Recognizing that this type of death sentencing by fiat was specifically outlawed by the Supreme Court in Maynard v. Cartwright, 486 U.S. 356 (1988), the magistrate recommended that the writ be granted.

The district court rejected the magistrate's recommendations. Moore v. Kinney, 119 F. Supp. 2d 1022, 1024 (D. Neb. 2000). The court first noted that Moore's resentencing panel did not use the Palmer construction of "exceptional depravity," but rather made up its own definition. Id. at 1029-30. Next, the court approved of this newly constructed definition, opining that the new definition's requirement that a victim be picked based on a specific characteristic would "exclude most defendants convicted of capital murder." Id. at 1031. The court gave no credence to the magistrate's point that any precision in the new definition's specific characteristic language was obviated by the inclusion of the phrase "such as," which modifies the definition to include *any* characteristic of the victim, resulting in no more narrow a definition than one we have previously found unconstitutionally vague. Id. at 1032-33.

-24-

The district court went on to hold that the resentencing panel had derived its definition from prior cases in which exceptional depravity existed as evidenced by the killer's cold, calculating planning of the victim's death, including selecting the victim on the basis some specific characteristic, foreclosing Moore's due process argument. Id. at 1033.

Moore again appealed to this court. In a divided panel opinion, our court decided that Nebraska had done nothing to narrow the aggravator that we had previously found unconstitutional. Thus, consistent with our 1990 and 1991 panel opinions, we again found Nebraska's "exceptional depravity" aggravator to be unconstitutional on its face and as interpreted by the Nebraska Supreme Court. Moore v. Kinney, 278 F.3d 774, 782 (8th Cir. 2002). We further determined that Nebraska had acted in contravention of the Constitution by forcing the resentencing panel to construct a new statute and apply it to Moore in the first instance. Id. Our authority for this principle derived from Gregg v. Georgia, 428 U.S. 153 (1976) (overturned on other grounds), and Moore I, which itself rested on Godfrey v. Georgia, 446 U.S. 420 (1980), for the same proposition. Because Moore's 1995 death sentence rested on an unconstitutional statute – just as his 1980 death sentence did – we remanded the matter for resentencing, with directions that Moore could not be sentenced to death on the basis of the "exceptional depravity" aggravator.

## II. DISCUSSION

## A. THE "EXCEPTIONAL DEPRAVITY" DEATH PENALTY AGGRAVATOR THAT WAS APPLIED TO MOORE AT HIS 1995 SENTENCING WAS UNCONSTITUTIONALLY VAGUE.

Although the majority calls into question the propriety of the 1990 panel decision, it acknowledges that our vagueness analysis concerns Moore's 1995 resentencing proceeding. I agree, and will focus my discussion accordingly. Throughout the entirety of this case, one thing has remained static: neither the

Nebraska Legislature nor the Nebraska Supreme Court has fashioned a death penalty sentencing scheme that provides the sentencing body with a cogent, "meaningful basis for distinguishing the few cases in which [the death penalty] is imposed from the many cases in which it is not." Gregg v. Georgia, 428 U.S. 153, 188 (1976) (opinion of Stewart, Powell, and Stevens, JJ.) (quoting Furman v. Georgia, 408 U.S. 238, 313 (1972) (White, J., concurring)). As it stands, Nebraska's checkerboard approach to narrowing an unconstitutional aggravator "fails adequately to inform [the sentencing body] what they must find to impose the death penalty and as a result leaves them and appellate courts with the kind of open-ended discretion which was held invalid in Furman." Maynard v. Cartwright, 486 U.S. 356, 361-62 (1988) (full citation omitted).

Initially, we consider whether Nebraska's "exceptional depravity" aggravator is constitutional on its face. It provides for imposition of the death penalty where, *inter alia*, "[t]he murder . . . manifested exceptional depravity by ordinary standards of morality and intelligence." Neb. Rev. Stat. § 29-2523(1)(d). In Walton v. Arizona, 497 U.S. 639 (1990), the Supreme Court recognized that a similar aggravator was clearly unconstitutional on its face. Walton, 497 U.S. at 654 ("In this case there is no serious argument that Arizona's 'especially heinous, cruel or *depraved*' aggravating factor is not facially vague." (emphasis added)). Finding no significant difference between the unconstitutionally vague Arizona statute and the one applied to Moore, it is clear that Nebraska's "exceptional depravity" aggravator is also unconstitutional on its face.

Nonetheless, a state supreme court may salvage a facially vague statute through a narrowed interpretation. See Walton, 497 U.S. at 654 (upholding facially unconstitutional statute where Arizona Supreme Court had narrowed its construction). Moore's first sentencing panel attempted to narrow the unconstitutional aggravator by construing "exceptional depravity" to mean a murder "so coldly calculated as to indicate a state of mind totally and senselessly bereft of

regard for human life." <u>State v. Moore</u>, Order of Sentence at 9 (Dist. Ct. Douglas County June 20, 1980), *aff'd*, <u>State v. Moore</u>, 316 N.W.2d 33 (1982). This construction failed in part because every premeditated murder, by its very nature, is "calculated," otherwise the verdict would not stand. The word "cold," as used in this phrase, is equally unilluminating. Our first panel correctly recognized that the sentencing court's construction of the aggravator "offers little, if any, objective guidance," <u>Moore I</u>, 904 F.2d at 1230, and is consequently not in accord with the Supreme Court's requirement that the aggravator "channel the sentencer's discretion by clear and objective standards that provide specific and detailed guidance," <u>Godfrey v. Georgia</u>, 446 U.S. 420, 428 (1980) (opinion of Stewart, Blackmun, Powell, and Stevens, JJ.) (footnotes and internal quotation marks omitted).[10]

The state attempted to bring its vague aggravator into constitutional compliance again following Moore's 1995 resentencing hearing. The resentencing panel crafted its own construction of the "exceptional depravity" aggravator, and found that Moore deserved the death penalty because the murders exhibited "the killer's cold, calculated planning." <u>State v. Moore</u>, Order of Sentence at 14 (Dist. Ct. Douglas Co. Apr. 21, 1995). Apparently cognizant that this construction was nearly identical to the one held unconstitutional by our court in 1990, the resentencing panel attempted to modify the aggravator by suggesting that "the purposeful selection of a particular victim on the basis of specific characteristics <u>such as</u> race, gender, creed, sexual orientation, disability, or age" was proof of "cold, calculating planning." <u>Id.</u> (emphasis added).

---

[10]In <u>Arave v. Creech</u>, 507 U.S. 463, 471-76 (1993), the Supreme Court upheld an aggravator that had been interpreted to mean the murderer was a "cold-blooded, pitiless slayer." As the Supreme Court noted, "the phrase 'cold-blooded, pitiless slayer refers to a killer without feeling or sympathy." <u>Id.</u> at 472. On the other hand, the construction in Moore's case is concerned with the type of planning undertaken by the killer. As such, I find the aggravator approved in <u>Creech</u> to be inapposite to the one at issue in Moore's case.

Rather than clarifying the aggravator, the panel complicated matters by inserting an open-ended list of qualifiers, including the basis on which Moore selected his victims. However, the phrase "such as" renders the list of traits following it at most advisory, and most likely useless. The effect is that the list of specific characteristics remains open-ended, leaving it to the sentencing body to determine what traits may be included in the list. This does not comport with the Supreme Court's mandate that the aggravator must provide clear, objective, and detailed standards that guide the sentencing body's discretion. Godfrey, 446 U.S. at 428; see also Cartwright, 486 U.S. at 362 ("Since Furman, our cases have insisted that the channeling and limiting of the sentencer's discretion in imposing the death penalty is a fundamental constitutional requirement for sufficiently minimizing the risk of wholly arbitrary and capricious action.").

Put another way, "[i]f the sentencer fairly could conclude that an aggravating circumstance applies to *every* defendant eligible for the death penalty, the circumstance is constitutionally infirm." Arave v. Creech, 507 U.S. 463, 474 (1993). Here, it is hard to imagine a murder that would not be committed on the basis of some specific characteristic of the victim. While race, gender, creed, sexual orientation, disability, and age are some characteristics, a victim may also be chosen because of where he or she worked, or because of his or her tone of voice, or because of appearance, or because of socioeconomic status. In short, the list is endless; the sentencer's discretion has not been narrowed by the new construction.

Moreover, to the extent that Nebraska intends to use this construction of "exceptional depravity" in conjunction with the Palmer construction, the aggravator's shortcomings become more pronounced. Palmer held that "exceptional depravity" was present where the killer relished in the murder, inflicted gratuitous violence, or mutilated the victim; where the killing was senseless; or where the victim was helpless. State v. Palmer, 399 N.W.2d 706, 731-32 (Neb. 1986). Adding the "cold, calculated planning" construction, it is hard to imagine any defendant, once convicted

of first-degree murder, who would not fit one of these many circumstances. If permitted to stand, Nebraska has, through its broadened constructions, created a catch-all death penalty aggravator. Our court found the "exceptional depravity" aggravator unconstitutional in 1990, and it remains so today.

**B. THE DEATH PENALTY SENTENCING PROCEDURES USED BY NEBRASKA VIOLATED MOORE'S CONSTITUTIONAL DUE PROCESS RIGHTS.**

While I remain convinced that the Nebraska "exceptional depravity" aggravator is unconstitutionally vague, Moore's sentence must be set aside for an additional reason: Nebraska's procedures for sentencing Moore to death violated his due process rights. I agree with the majority that Moore's due process challenge to Nebraska's reconstruction of the "exceptional depravity" aggravator presents two distinct issues: 1) whether Moore could have known in 1979 that selecting victims based in part on their age would be accorded so much weight at his sentencing; and 2) whether the resentencing panel's post hoc construction of the aggravator left him without adequate notice of what criteria the panel would rely upon in its sentencing determination. I find Moore's argument compelling on both of these matters, and would hold that the procedure Nebraska used in Moore's case denied him of the process due under the United States Constitution.

**1.**

Throughout the original proceedings, at no time – not when Moore committed the crimes, confessed, waived his right to a jury trial, was convicted, or was sentenced – did he have reason to know that indicating that he picked the victims because they were older than he would become an integral part of the "exceptional depravity" calculus. At the time of these proceedings, "exceptional depravity" had been defined to mean that either: 1) the victims were helpless or unresisting, State v. Holtan, 250

N.W.2d 876 (Neb. 1977); 2) the act itself was "so coldly calculated as to indicate a state of mind totally and senselessly bereft of regard for human life," State v. Rust, 250 N.W.2d 867, 874 (Neb. 1977); or 3) the depravity is so apparent "as to obviously offend all standards of morality and intelligence," State v. Simants, 250 N.W.2d 881, 891 (Neb. 1977). While picking a victim based on age is certainly a more narrow construction than any of these definitions, the available constructions of "exceptional depravity" could not have alerted Moore that doing so automatically implicated a death sentence.

Moore's case is analogous to the circumstance presented to the Ninth Circuit in Coleman v. McCormick, 874 F.2d 1280 (9th Cir. 1989) (en banc), *cert. denied*, 493 U.S. 944 (1989). In Coleman, the mandatory death penalty statute in effect when the defendant was tried and convicted was held to be unconstitutional, and was replaced by a more narrow statute that weighed aggravating and mitigating circumstances. 874 F.2d at 1285. The Ninth Circuit, sitting en banc, recognized that "the due process clause protects individuals' rights to fundamentally fair procedures before they are deprived of their liberty rights." Id. at 1286. Acknowledging its obligation to closely scrutinize the procedures used in capital sentencing cases, the court concluded that retroactive application of the narrowed death penalty statute deprived the defendant of due process because he "had no reason to suspect that his decisions at trial would come back to haunt him at a sentencing hearing." Id. at 1288. Similarly, the resentencing panel's new construction in Moore's case was not a reasonably foreseeable evolution of the "exceptional depravity" aggravator.[11]

---

[11]In its 1980 sentencing order, the panel noted that Moore selected his victims in part due to their age. This fact was reiterated by the Nebraska Supreme Court in its 1982 decision. However, as noted above, these cases were held unconstitutional by the federal district court in 1988 and our court in 1990, leaving unanswered the question of whether age would be considered by the sentencing court.

**2.**

Moore's due process rights were further violated by the resentencing panel's post hoc application of its newly-defined "exceptional depravity" aggravator. In its 1990 panel opinion, our court indicated that the Nebraska Supreme Court could "salvage a facially-vague statute by construing it to provide the sentencing body with objective criteria for applying the statute." Moore I, 904 F.2d at 1229. This, of course, would provide the sentencing body with the "specific and detailed guidance" necessary to pass constitutional muster. Godfrey v. Georgia, 446 U.S. 420, 428 (1980); accord Walton v. Arizona, 497 U.S. 639, 653-54 (1990) (approving application of a vague aggravator when it had first been narrowed by state supreme court). In no cases cited by the majority or uncovered in my research, however, has the Supreme Court approved of a state supreme court delegating the task of narrowing a death penalty aggravator to a district court.

On remand following this court's 1990 and 1991 decisions, the Nebraska Supreme Court could have narrowed the aggravator, or provided some direction to the resentencing panel to guide its decision. This is particularly true in light of Nebraska's adherence to the construction it put forth in State v. Palmer, 399 N.W.2d 706, 731-32 (Neb. 1986), nearly ten years before Moore's resentencing hearing. Instead, the Nebraska Supreme Court remanded to the resentencing panel, leaving the panel with what it believed was "an ineffective and constitutionally infirm interpretation of 'exceptional depravity,'" and "no effective appellate definition" to guide the panel's analysis. State v. Moore, Order of Sentence at 12 (Dist. Ct. Douglas Co. Apr. 21, 1995). Accordingly, the panel was forced to reconstruct the "exceptional depravity" aggravator and then apply it to Moore in the first instance.

Logic and fairness would dictate that the resentencing panel should have crafted its new construction of the aggravator, informed the parties as to what the construction was, held an evidentiary hearing, and then heard argument from the

parties as to whether Moore's circumstance fit within the panel's construction of the aggravator. Undertaking the process in this way would have given both Moore and the state advance notice of the criteria it was using, such that the parties could provide informed argument on whether the facts of Moore's case should result in a sentence of death.[12]

Instead, the resentencing panel took precisely the opposite approach: rather than alerting Moore as to what criteria would guide its decision at the outset of the proceedings, the panel first held an evidentiary hearing and then heard oral argument from both parties. The first time the panel indicated to Moore that it was going to narrow the "exceptional depravity" aggravator to include selection of victims based on age, was in its final pronouncement of Moore's sentence. Put another way, it was not until the adversarial process was complete that the panel decided what criteria it would rely upon for determining the sentence. This left Moore in the unenviable position of trying to argue for his life without any idea of what would guide the panel's decision. A post hoc sentencing scheme such as this denies defendants due process in the most basic sense, for they have no prior notice of the law to be used against them. Accord Osborne v. Ohio, 495 U.S. 103, 115 (1990) (holding new construction of statute may be applied to conduct occurring prior to construction only where defendant has fair warning of new application); Marks v. U.S., 430 U.S. 188, 191 (1977) (same).

The majority suggests that Moore must have known that the panel would define the "exceptional depravity" aggravator to include selection of the victims based on

_____

[12]There is no argument that the process I have outlined would be less efficient than the process actually employed; Moore's resentencing began on April 25, 1994, and was not concluded until April 21, 1995–almost a full year later. In the interim, the resentencing panel held a preliminary hearing on April 25, 1994, took evidence on June 29-30, 1994, heard oral argument on October 14, 1994, and concluded by reading its decision in open court on April 21, 1995.

age, citing <u>State v. Joubert</u>, 399 N.W.2d 237 (Neb. 1986).  I disagree.  First, I note that at the time of Moore's resentencing hearing, the Nebraska Supreme Court's <u>Joubert</u> decision had been overturned by the federal district court's grant of habeas corpus relief.  <u>See</u> <u>Joubert v. Hopkins</u>, 8:CV91-00350, slip op. (D. Neb. Oct. 11, 1994).  It cannot be said that Moore should have anticipated that <u>Joubert</u> would, over a year later, ultimately be reversed by our court.  At the time he was sentenced, the Nebraska Supreme Court's <u>Joubert</u> decision was bad law, and Moore had no reason to believe otherwise.

Nonetheless, even if <u>Joubert</u> is considered, it does not stand for the broad proposition that exceptional depravity is manifested by selecting victims due to their age.  The defendant in <u>Joubert</u> kidnaped and killed two young boys within a four-month period.  He was sentenced to death in part because the panel found the murders to exhibit exceptional depravity.  In affirming the sentence, the Nebraska Supreme Court noted that Joubert "planned these abductions and murders far in advance," that "the murders were to be repetitive," and "the victims selected by the defendant would, by his fantasized standards, be somewhat defenseless and consist of prepubescent boys or women fitting the pictorial description gleaned from detective magazine covers."  <u>State v. Joubert</u>, 399 N.W.2d 237, 250 (Neb. 1986).  The court concluded that "the murders were coldly planned as part of a repetitive program of self-gratification, involving immature victims *selected on the basis of their availability at a time when the likelihood of detection was slight*."  <u>Id.</u> at 251 (emphasis added).  Given these statements, the majority misreads <u>Joubert</u> in concluding that age was used as an aggravator.  It is clear that the court in <u>Joubert</u> was concerned with the victims' age and immaturity only as it concerned other factors the court considered relevant, such as the their availability, helplessness as victims, and relation to the gratification Joubert took in the killings.  That the victims were young was a fact of the <u>Joubert</u> case, but that does not transform age into an aggravating factor absent a more specific pronouncement to that effect.

-33-

The majority also claims that Moore had sufficient notice that the "exceptional depravity" aggravator would be constructed to include selecting victims on the basis of age because of a single question from a member of the resentencing panel during oral argument. At the October 14, 1994 resentencing hearing, Judge Rist asked Moore's counsel, "What about the testimony that he selected older men because he didn't want to kill younger ones?" State v. Moore, Sent. Tr. at 263 (Dist. Ct. Douglas County Oct. 14, 1994), *available at* Moore v. Kinney, No. 4:99CV3263 (D. Neb. 2000). Notably missing from the majority's opinion, however, is the context for this statement: Moore's attorney began his argument by taking each aggravator proposed by the prosecutor in turn; at the time of this question, counsel was in the midst of analyzing the applicability of aggravator (1)(b), which deals with murders committed in an effort to conceal commission of the crime or the identity of the perpetrator. See Neb. Rev. Stat. 29-2523(1)(b). Judge Rist's question was in response to argument on this point, and was not raised again in any form during discussion on the "exceptional depravity" aggravator. Thus, any assertion that the age question related to the "exceptional depravity" aggravator is simply not supported by the record. The majority's insinuation that a single question about age during argument on an unrelated aggravator should have alerted Moore that the panel would interpret "exceptional depravity" to mean selecting victims based on their age is simply untenable.[13]

---

[13]A close read of the sentencing transcript in this matter reveals that Moore was truly without prior notice that age would become part of the "exceptional depravity" calculus, even by the prosecutor's requested interpretation. At the preliminary hearing, Moore's counsel asked the court to order the prosecutor to state what aggravators he was relying upon. The prosecutor responded that he was relying on the aggravators in the statute. Moore v. Kinney, 4:99CV3263, Sent. Tr. at 40-41 (Dist. Ct. Douglas County Oct. 14, 1994). During the evidentiary hearing, the prosecutor told the court he was relying on the "exceptional depravity" aggravator as defined in Palmer and Joubert, id. at 78-79, but the prosecutor failed to provide a written brief on the matter, id. at 220, and then admitted that he believed the "coldly calculated" construction of the aggravator had been abandoned, and he was thus

**C.**

In <u>Moore II</u>, we recognized that the well-established concept of *stare decisis* prohibited us from reconsidering matters decided by the panel in <u>Moore I</u>. Today, this court, sitting en banc, gives little credence to the importance of uniformity in the law and reexamines a decision that has stood for over a decade. While I question whether this approach exhibits sound jurisprudence, I will take this opportunity to address a matter not fully explored in <u>Moore II</u>: whether the 1990 panel should have clarified that the resentencing court could no longer rely on the "exceptional depravity" aggravator.

In a state such as Nebraska that makes a death penalty determination by weighing aggravating and mitigating factors, "[u]se of a vague or imprecise aggravating factor in the weighing process invalidates the sentence and at the very least requires . . . reweighing in the state judicial system." <u>Stringer v. Black</u>, 503 U.S. 222, 237 (1992). A question remains as to whether a sentencing court on remand can resentence a defendant to death on the basis of an aggravator already found to be unconstitutional. The answer is clearly no, because of the due process concerns outlined in <u>Moore II</u> and reiterated above. Moore's resentencing panel recognized that it had the option of deciding Moore's sentence without reference to the "exceptional depravity" aggravator, for other aggravators were also found to be present. Accordingly, the panel could have weighed these other aggravators against the mitigating evidence to determine if a death sentence was appropriate. The panel was also mindful, however, that the original sentencing panel based its death sentence on the "exceptional depravity" aggravator "to a significant degree." <u>State v. Moore</u>, Order of Sentence at 12 (Dist. Ct. Douglas Co. Apr. 21, 1995). This statement leads me to believe that the panel recognized that without the "exceptional depravity"

———————————

relying only on the <u>Palmer</u> construction, <u>id.</u> at 234-35.

-35-

aggravator, the remaining aggravating circumstances did not support a sentence of death.

## III.  CONCLUSION

Nebraska has not narrowed its "exceptional depravity" aggravator in a constitutionally acceptable manner; the aggravator remains just as open-ended as it was at Moore's original sentencing.  Moreover, the procedures used by the Nebraska courts violated Moore's due process rights, leaving him without notice of what criteria might be used to decide his fate.  I would reverse the district court, and remand the matter for resentencing without reliance on the "exceptional depravity" aggravator.

MELLOY, Circuit Judge, with whom SMITH, Circuit Judge, joins, dissenting.

I join in Section II.B.2. of Judge Heaney's dissent.  I agree with that portion of the dissent which finds that Moore's due process rights were violated by the resentencing panel's post hoc application of its newly defined aggravator.

As outlined in footnote 8 of Judge Heaney's dissent, the parties were relying upon the Nebraska Supreme Court's construction of the "exceptional depravity" aggravator as set out in State v. Palmer, 399 N.W.2d 706 (Neb. 1986).  Evidence was presented and legal arguments made based upon each side's analysis of the Palmer decision.  I do not believe that Palmer can be read to give fair notice to either party that the age of the victim would be considered a factor in determining exceptional depravity.  Likewise, for the reasons outlined in Judge Heaney's dissent, I do not believe that the Nebraska Supreme Court's decision in State v. Joubert, 399 N.W.2d 237 (Neb. 1986), provided the necessary due process notice.

In both Walton v. Arizona, 497 U.S. 639 (1990), and Lewis v. Jeffers, 497 U.S. 764 (1990), the Supreme Court held that the overbroad exceptional depravity aggravator can only be salvaged if "a State has adopted a constitutionally narrow construction of a facially vague aggravating circumstance, and if the State has applied that construction to the facts of the particular case . . . ." Lewis, 497 U.S. at 779. Thus, Walton and Lewis clearly set forth a two-step process. First, the overly broad aggravator has to be construed in a constitutional fashion, and only then can that construction be applied to the facts of the particular case. In this case, the aggravator was construed and narrowed after a full presentation of the evidence and without notice to the defendant as to the standards to be applied in making the decision on imposition of the death penalty.

As the majority indicates, the Nebraska Supreme Court addressed the due process issue raised in this portion of Judge Heaney's dissent. See State v. Moore, 553 N.W.2d 120, 133-35 (Neb. 1996). Habeas relief can only be granted if the state's adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); Williams v. Taylor, 529 U.S. 362, 402-13 (2000) (interpreting § 2254(d)(1)). I believe that the failure to first clearly set out the construction of the aggravator and advise the parties of that construction is contrary to clearly established Supreme Court precedent, specifically, Bouie v. City of Columbia, 378 U.S. 347 (1964). Bouie makes clear that the Fourteenth Amendment is violated when a person is required to speculate as to the application of a statute. Id. at 350-54. I find unpersuasive the Nebraska Supreme Court's conclusion that Bouie is inapposite because it dealt with a statute which had been broadened in its application while the exceptional depravity aggravator in this case has been arguably narrowed. The core principle of Bouie, as supported by the Supreme Court decisions cited in that case, is that due process requires that the resentencing panel should have given notice to Moore as to the criteria which would guide its decision.

-37-

I do not agree with that portion of Judge Heaney's dissent which would require the Nebraska Supreme Court to narrow the aggravator before remand to the trial court. I believe the resentencing panel had the authority to narrow the aggravator and could have constitutionally done so prior to the hearing. I do join that portion of Section II.B.2. of Judge Heaney's dissent which finds that Moore's due process rights were violated by the "post hoc application of its newly defined 'exceptional depravity' aggravator." For that reason, I would reverse the district court and remand for resentencing.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.